P<small>EKELIS</small> and F<small>ORREST</small>, JJ., concur.

[No. 21251-6-I. Division One. May 30, 1989.]

M<small>AE</small> S<small>TORK</small>, *Appellant,* v. I<small>NTERNATIONAL</small> B<small>AZAAR</small>, I<small>NC</small>., <small>ET AL</small>, *Respondents.*

*Michael W. Gendler* and *Bricklin & Gendler,* for appellant.

*Steven T. McFarland, Michael E. Ritchie,* and *Ellis & Li,* for respondents.

SWANSON, J.—Mae Stork appeals the trial court's judgment dismissing her claims of discrimination, harassment,

emotional distress, and constructive discharge, and award-
ing costs to the defendants, International Bazaar, Inc., and
Peter J. Hong. We affirm.

The trial court's findings of fact, which we find to be
supported by substantial evidence, may be summarized as
follows:

During January through June of 1985, Peter Hong was
employed by International Bazaar, an import retail busi-
ness, as an "independent consultant" who actively partici-
pated in most, if not all, aspects of International Bazaar's
management. Hong recommended that all International
Bazaar store managers hire senior citizens from local senior
community centers. Pursuant to this recommendation
International Bazaar directed advertising at senior citizens
and in January 1985 hired 64-year-old Mae Stork as a sales
clerk in its Everett Mall store. Stork worked full time and
performed her job in a satisfactory manner.

In April 1985, the manager of the Everett Mall store,
Pam Chappel, announced that she was leaving her position.
Stork indicated that she was interested in the position and
Chappel encouraged her to apply. At Stork's request,
Chappel agreed to work with Stork to familiarize her with
the manager's duties. Chappel also recommended to Hong
that Stork be promoted to manager.

Although Stork was qualified for the manager's position,
International Bazaar hired Mr. Kim to fill the position in
June 1985. Prior to the hiring decision being made, Kim
had represented to Hong that he had a university degree in
business administration, a knowledge of management and
bookkeeping, experience in running his own business, and
experience in the importing business. Stork lacked these
credentials and experience. Hong told Stork that he was
hiring Kim because of his retail experience. The trial court
found that shortly after Kim was hired, Hong "more likely
than not" told Chappel that Stork was not hired/promoted
as manager because she was "too old". However, before,
during and after June 1985, International Bazaar employed
other store managers who were over 40 years old.

On at least two occasions after becoming store manager, Kim attempted to limit Stork's job duties explicitly on account of her age. On another occasion, Kim implied that Stork was dishonest. This resulted in a meeting between Stork and Hong in June 1985 in which Stork's employment with International Bazaar ended. Stork claims that Hong demanded her resignation. Hong claims that Stork resigned voluntarily.

On August 1, 1985, Stork filed a complaint against International Bazaar and Hong alleging discrimination, harassment, infliction of emotional distress, and constructive discharge. The case was tried to the court without a jury from June 24 through June 29, 1987. After Stork rested her case, the defendants moved to dismiss. The court weighed the evidence and dismissed all of Stork's claims except her claim for age discrimination in failing to promote her to the manager's position.

Following the conclusion of the case, the court entered findings of fact, conclusions of law and judgment dismissing all of Stork's claims and awarding costs to the defendants. In dismissing Stork's claim of age discrimination, the trial court concluded that although Stork had satisfied her prima facie case, she failed to satisfy her burden of proving that age was the determinative factor in the employment decision. With regard to the other claims of discrimination and those of harassment, infliction of emotional distress, and constructive discharge, the trial court concluded that there was insufficient evidence to support them. This appeal timely followed.

### AGE DISCRIMINATION

Stork bases her age discrimination claim upon RCW 49.60.180: "It is an unfair practice for any employer . . . (2) [t]o discharge or bar any person from employment because of age . . ." This statute, however, does not provide any criteria for establishing an age discrimination case. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 361, 753 P.2d 517 (1988). Therefore, the Washington courts

have looked for guidance to federal cases construing the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* (1976). *See Grimwood,* 110 Wn.2d at 361; *Brady v. Daily World,* 105 Wn.2d 770, 776, 718 P.2d 785 (1986); *Roberts v. ARCO,* 88 Wn.2d 887, 892, 568 P.2d 764 (1977).

The federal courts have recognized that a prima facie case of age discrimination can be made out in at least three ways:

> First, a plaintiff may produce evidence proving all prongs of the test established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Price v. Maryland Casualty Co.,* 561 F.2d 609 (5th Cir. 1977). To show a prima facie case under this test, the plaintiff must prove that "(1) he was a member of the protected group, (2) he was discharged, (3) he was replaced with a person outside the protected group, and (4) he was qualified to do the job." *Id.* at 612. Second, a plaintiff can make out a prima facie case by direct evidence of discriminatory intent. Third, a prima facie case may be established by statistical proof of a pattern of discrimination.

*Buckley v. Hospital Corp. of Am., Inc.,* 758 F.2d 1525, 1529 (11th Cir. 1985) (citing *Pace v. Southern Ry. Sys.,* 701 F.2d 1383, 1388 (11th Cir.), *cert. denied,* 464 U.S. 1018, 78 L. Ed. 2d 724, 104 S. Ct. 549 (1983)). *See also Loeb v. Textron, Inc.,* 600 F.2d 1003, 1016–17 (1st Cir. 1979).

If a prima facie case is established by means of the *McDonnell Douglas* test, the burden shifts to the defendant–employer to articulate a legitimate, nondiscriminatory reason for the decision. *Grimwood,* 110 Wn.2d at 364. However, the burden of persuasion remains at all times upon the plaintiff. *Grimwood,* 110 Wn.2d at 363. Once the employer fulfills this burden of production, the plaintiff must satisfy his ultimate burden of persuasion by showing that the employer's articulated reasons are a mere pretext for what is a discriminatory purpose. *Grimwood,* 110 Wn.2d at 363–64.

In *Grimwood, Brady,* and *Roberts,* the Washington Supreme Court has adopted the analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), as the method for proving a claim of age discrimination in Washington. The *Grimwood* court, however, also recognized that the federal courts do not regard this as the exclusive method for proving a claim of discrimination.[1] *Grimwood,* 110 Wn.2d at 363. But even though such recognition was given, *Grimwood* went on to emphasize that "the burden of *persuasion* remains at all times upon the plaintiff" and gave no indication that any other standard was being adopted in Washington. *Grimwood,* 110 Wn.2d at 363.

Washington courts, however, have not yet explicitly addressed the issue of whether methods other than the *McDonnell Douglas* analysis will be recognized for the purpose of establishing a prima facie case of age discrimination. Stork contends that she established a prima facie case of age discrimination under the second method discussed above by presenting direct evidence of discriminatory intent and, therefore, the trial court erred by applying the *McDonnell Douglas* analysis. The United States Supreme Court has held that, under the ADEA, the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 83 L. Ed. 2d 523, 105 S. Ct. 613, 621 (1985). The apparent reasoning of the Supreme Court is that "[t]he shifting burdens of proof set forth in

---

[1]"While we conclude that *McDonnell Douglas* provides an appropriate and workable formula for the trial of age discrimination cases, it should not be used inflexibly as a vehicle for organizing evidence or presenting a case to a jury. Above all, it should not be viewed as providing a format into which all cases of discrimination must somehow fit. The Supreme Court has made it abundantly clear that *McDonnell Douglas* was intended to be neither 'rigid, mechanized, or ritualistic,' *Furnco [Constr. Corp. v. Waters],* 438 U.S. [567] at 577, 98 S.Ct. 2943 [(1978)], nor the exclusive method for proving a claim of discrimination, [*International Bhd. of*] *Teamsters [v. United States],* 431 U.S. [324] at 358, 97 S.Ct. 1843 [(1977)]." *Grimwood,* 110 Wn.2d at 363 (quoting *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1016–17 (1st Cir. 1979)).

*McDonnell Douglas* are designed to assure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence.' *Loeb* v. *Textron, Inc.,* 600 F.2d 1003, 1014 (CA1 1979)." *Trans World,* 469 U.S. at 121.

In application, the federal courts have made the following distinctions between the *McDonnell Douglas* analysis and the direct evidence analysis:

> Under the *McDonnell Douglas* test plaintiff establishes a prima facie case when the trier of fact *believes* the four circumstances outlined above which give rise to an *inference* of discrimination. Where the evidence for a prima facie case consists, as it does here, of direct testimony that defendants acted with a discriminatory motivation, if the trier of fact believes the prima facie evidence the ultimate issue of discrimination is proved; no inference is required. Defendant cannot rebut this type of showing of discrimination simply by articulating or producing evidence of legitimate, non–discriminatory reasons. Once an unconstitutional motive is proved to have been a significant or substantial factor in an employment decision, defendant can rebut only by proving by a preponderance of the evidence that the same decision would have been reached even absent the presence of that factor.

(Emphasis in original; footnotes omitted).

*Buckley,* 758 F.2d at 1529–30 (quoting *Lee v. Russell Cy. Bd. of Educ.,* 684 F.2d 769, 774 (11th Cir. 1982)). *See also Price Waterhouse v. Hopkins,* ___ U.S. ___, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989). Therefore, to establish a prima facie case by direct evidence under the ADEA, the plaintiff is required to establish two factors: first, provide direct evidence that defendants acted with a discriminatory motivation; and second, prove that the discriminatory motivation was a "significant or substantial factor in any employment decision." *See Buckley,* 758 F.2d at 1529–30; *Hopkins,* 104 L. Ed. 2d at 289. Once these factors are established, the burden shifts to the employer to prove, by a preponderance of the evidence, that the same decision would have been reached even absent the presence of the discriminatory

factor.[2] This is unlike the *McDonnell Douglas* analysis, where the employer's burden is to merely articulate a legitimate nondiscriminatory reason. However, under both *McDonnell Douglas* and the direct evidence analysis, the ultimate burden of persuasion remains at all times on the plaintiff. *See Hopkins,* 104 L. Ed. 2d at 285.

In the present case, there was some direct evidence of age discrimination by the defendants against Stork. The trial court found that "more likely than not" Hong told Chappel that Stork had not been promoted because she was too old. The court also found that age was a factor in the promotion decision and concluded that discrimination was *one* of the reasons for the defendants' promotion decision. Support for these findings is found in the record.

■ The defendants, however, contend that the direct evidence theory was not raised by Stork to the trial court and, therefore, should not be considered on appeal.

Failure to raise an issue before the trial court generally precludes a party from raising it on appeal. *Seattle–First Nat'l Bank v. Shoreline Concrete Co.,* 91 Wn.2d 230, 240, 588 P.2d 1308 (1978); RAP 2.5(a). For example, a party must except to erroneous jury instructions in order to preserve the error for review. *Estate of Ryder v. Kelly–Springfield Tire Co.,* 91 Wn.2d 111, 114, 587 P.2d 160 (1978). The reason for this rule is to afford the trial court an opportunity to correct any error, thereby avoiding unnecessary appeals and retrials. *Estate of Ryder,* at 114.

The same rationale requires parties to inform a court acting as trier of fact of the rules of law they wish the court to apply. While a party has the right to assume that the trial court knows and will properly apply the law, this does not excuse failure to seek correction of an error once the complaining party becomes aware of it. If by no other means, this can be done by a motion for a new trial. *State v. Wicke,* 91 Wn.2d 638, 642, 591 P.2d 452 (1979). Failure to make such a motion when it would

---

[2]Federal courts have held that the burden shifting provided by the direct evidence analysis is justified because the employer is a proven wrongdoer whose discriminatory motivation had a substantial impact on the employment decision. *See Blalock v. Metals Trades, Inc.,* 775 F.2d 703, 711 n.11 (6th Cir. 1985).

enable the trial court to correct its error precludes raising the error on appeal unless the error was pointed out at some other point during the proceedings. *Wicke,* at 642–43; *Balandzich v. Demeroto,* 10 Wn. App. 718, 726, 519 P.2d 994 (1974). *See also* CR 46 (party must make known action which he or she desires court to take).

*Smith v. Shannon,* 100 Wn.2d 26, 37–38, 666 P.2d 351 (1983).

In her trial memorandum, Stork clearly outlined the *McDonnell Douglas* analysis but failed to state the law regarding the direct evidence theory or request the court to apply the direct evidence theory. The nearest Stork came to arguing the direct evidence theory to the trial court was in oral argument, when her attorney stated:

There are two ways to show discrimination: one, directly by discriminatory actions and we feel we have done that too; second, by making a prima facie case.

Based on these facts, we cannot agree with Stork that the direct evidence theory, which has never been applied in Washington, was presented to the trial court. Therefore, it cannot be considered for the first time on appeal.

■ However, even assuming the theory was properly raised below, we decline to adopt the distinction made by the federal courts in construing cases involving direct evidence of discrimination. In the interest of maintaining a uniform procedure for bringing discrimination actions, we adhere to *Grimwood v. University of Puget Sound, Inc.,* 110 Wn.2d 355, 753 P.2d 517 (1988) and make no distinction between direct and indirect evidence. Not only is any such distinction impracticable from the standpoint of instructing a jury, but the necessity for making such a distinction is circumvented under the *McDonnell Douglas* analysis by allowing direct evidence to be used to satisfy the plaintiff's burden of showing pretext.

By adopting the direct evidence approach, it would become very difficult to instruct a jury without unduly

confusing the jurors.[3] In a federal district court case which criticized the application of the direct evidence theory, the court stated:

> On the one hand, the jury is instructed that the burden of persuasion or proof is on the plaintiff. On the other hand, they are instructed that, when there is direct evidence, the burden shifts to the defendant. Thus direct evidence is given inordinate weight and the jury cannot help but be confused.

*Spanier v. Morrison's Mgt. Servs.,* 611 F. Supp. 642, 645 (N.D. Ala. 1985), *aff'd in part, rev'd in part,* 822 F.2d 975 (11th Cir. 1987). The more confused a jury becomes, the less likely that justice will be served. Accordingly, we hold that the trial court did not err by applying the *McDonnell Douglas* analysis.

Next, we must determine whether the trial court correctly applied the *McDonnell Douglas* analysis. Under the *McDonnell Douglas* analysis, the plaintiff has the initial burden of establishing a prima facie case. *Grimwood,* 110 Wn.2d at 362–63.

> Once a plaintiff has made out a prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for termination. The employer's burden at this stage is not one of persuasion, but rather a burden of production. To go forward, the employer need only articulate reasons sufficient to meet the prima facie case. *See International Bhd. of Teamsters v. United States,* 431 U.S. 324, 360 n.46, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977) (discussing nature of evidence necessitated by the employer's burden of production). Once the employer fulfills his burden of production, to create a genuine issue of material fact the plaintiff must satisfy his ultimate burden of persuasion and show that the employer's articulated reasons are a mere pretext for what, in fact, is a discriminatory purpose. *See Loeb,* at 1011–12.

*Grimwood,* 110 Wn.2d at 363–64.

---

[3]Washington courts have repeatedly instructed juries that the law makes no distinction between the weight to be given direct and circumstantial evidence. *See* WPI 1.03; WPIC 5.01.

Here, Stork's prima facie case is established by unchallenged conclusion of law 5:

5. Plaintiff has met her burden of showing a prima facie case of age discrimination. She is within a protected age group, she had satisfactorily performed her work and was qualified to be promoted to the position of manager, and defendants hired someone else, Mr. Kim, who was presumably less than 40 years old.

The trial court concluded that the defendants, in turn, met their burden by articulating a legitimate, nondiscriminatory reason for not promoting Stork. This conclusion is supported by findings of fact 9 and 12.

9. Defendants produced admissible evidence that International Bazaar, Inc. hired Mr. Kim as manager based on legitimate non–discriminatory reasons, including his college degree in business administration, his knowledge of bookkeeping principles, his experience in owning and operating his own businesses, his experience in the importing business, and his display of hard work and a conscientious attitude while he was temporarily working in the defendants' warehouse. Plaintiff lacked all of these credentials and experience. In addition, the performance of plaintiff under Pamela Chappel had not turned around the Everett store's low sales volume and unprofitability. Mr. Kim turned out to be not proficient in English which substantially detracted from his ability to manage defendant's store.

. . .

12. Defendants articulated legitimate nondiscriminatory reasons for hiring Mr. Kim rather than promoting Ms. Stork: management experience, experience in retail importing, business education, and the absence of a positive sales performance by the existing sales force, of whom plaintiff was one. (See Finding No. 9) The court finds that defendants were indeed looking for a manager who had more managerial experience than plaintiff and were also dissatisfied with the level of sales being generated by the personnel at the Everett Store, including plaintiff.

Stork challenges these findings and the conclusion.

■ Where the trial court has weighed the evidence, the reviewing court is limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment. *Ridgeview Properties v. Starbuck,* 96 Wn.2d 716, 719, 638 P.2d 1231 (1982).

Here, substantial evidence does support findings of fact 9 and 12 and they in turn support the conclusion that the defendants articulated legitimate, nondiscriminatory reasons for not promoting Stork. During testimony, Hong described what the qualifications, experience and duties of store manager were. Based on these qualifications, Hong stated that Stork was not qualified to be a store manager. Also in exhibit 5, the defendants listed reasons why Stork was not qualified for the store manager position and why Kim was qualified.

When the defendants satisfied this burden of production, the burden shifted back to Stork to show that these reasons were a mere pretext for what, in fact, was a discriminatory purpose. To meet this burden, the plaintiff must prove that age "made a difference in determining" the employment decision. *Cassino v. Reichhold Chems., Inc.,* 817 F.2d 1338, 1343 (9th Cir. 1987) (quoting *Kelly v. American Standard, Inc.,* 640 F.2d 974, 984–85 (9th Cir. 1981)). Although age need not be the only factor in the employment decision, the finder of fact must decide

> whether age was the "determining factor" in an employer's decision to discharge an individual, or, whether the employee would not have been discharged "but for" his age. *Id.; Loeb v. Textron, Inc.,* 600 F.2d 1003, 1019 (1st Cir.1979); *Laugesen v. Anaconda Co.,* 510 F.2d 307, 317 (6th Cir.1975).

*Cassino,* 817 F.2d at 1343–44. Here, the trial court concluded that, although age was one factor in the promotion decision, discrimination was not the determinative factor. This conclusion is supported by findings of fact 9 and 12 which in turn are supported by substantial evidence in the

record. Accordingly, the trial court's findings and conclusions regarding the application of the *McDonnell Douglas* analysis will not be disturbed on appeal.

At trial, Stork also argued that the defendants were liable for age discrimination based upon the conduct of Kim as the store manager. However, this claim was dismissed by the trial court at the conclusion of Stork's case. Under RCW 49.60, it is "an unfair practice for any employer . . . [t]o discriminate . . . in compensation or in other terms or conditions of employment because of age . . ." RCW 49.60-.180(3). The term "'[e]mployer' includes any person acting in the interest of an employer, directly or indirectly . . ." RCW 49.60.040. The trial court concluded that Kim's relationship to Stork was more similar to that of a fellow employee than a manager.

But even assuming Kim was an employer within the above definition, his conduct did not discriminate against Stork "in compensation or other terms or conditions of employment." Kim did not treat Stork differently by applying "terms or conditions" to her employment that did not apply to other employees. The trial court found that Kim "had at least twice attempted to limit [Stork's] job duties explicitly on account of her age, and had implied that [Stork] was dishonest." Limiting a store clerk's job duties does not, on its face, relate to terms or conditions of employment, and Stork presented no evidence that the duties which were limited were "terms or conditions" of her employment. Accordingly, the trial court properly dismissed Stork's discrimination claim that was based upon Kim's conduct.

## EMOTIONAL DISTRESS

Stork also argues that she is entitled to damages for emotional distress due to Kim's discriminatory conduct. In support of this argument, Stork cites only *Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 726 P.2d 434 (1986), and cases cited therein. These cases stand for the proposition that a plaintiff, once having proved discrimination under RCW

49.60, "is only required to offer proof of . . . emotional distress in order to have those damages included in recoverable costs". *Cagle,* 106 Wn.2d at 920 (quoting *Dean v. Metropolitan Seattle,* 104 Wn.2d 627, 641, 708 P.2d 393 (1985)).

As already discussed, RCW 49.60 does not apply to Kim's conduct and Stork does not argue that she is entitled to damages for emotional distress under any other theory. Therefore, damages for emotional distress were properly denied by the trial court.

## CONSTRUCTIVE DISCHARGE

 Next, Stork argues that she is entitled to damages for constructive discharge.

Constructive discharge occurs where an employer deliberately makes an employee's working conditions intolerable thereby forcing the employee to resign.

*Micone v. Steilacoom Civil Serv. Comm'n,* 44 Wn. App. 636, 643, 722 P.2d 1369 (citing *Barrett v. Weyerhaeuser Co. Severance Pay Plan,* 40 Wn. App. 630, 631–32, 700 P.2d 338 (1985)), *review denied,* 107 Wn.2d 1010 (1986). This court and the Ninth Circuit have clarified this rule by adopting an objective standard for determining when constructive discharge exists:

[A] constructive discharge exists when "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."

*Nolan v. Cleland,* 686 F.2d 806, 813 (9th Cir. 1982) (quoting *Bourque v. Powell Elec. Mfg. Co.,* 617 F.2d 61, 65 (5th Cir. 1980)); *see also Micone,* 44 Wn. App. at 643.

The trial court found that Stork had "voluntarily resigned as a result of unbecoming but nondiscriminatory conduct" by Kim and "because she found working under Mr. Kim intolerable" due to "the implication of dishonesty". The court then concluded that Stork had failed to establish constructive discharge. This conclusion is supported by the findings which in turn, are supported by the

record. A reasonable person in Stork's position would not necessarily feel compelled to resign as a result of Kim's treatment of Stork. Kim had directed Stork not to lift large items or to use the store ladder because of her age. On another occasion Kim had told Stork that she tired more easily because of her age and should "stand with feet apart and shift your weight back and forth from one foot to the other for ten minutes" to become rested. There was also an occasion in which Kim implied dishonesty by Stork. Shortly following this incident, Stork voluntarily resigned after working only 8 days with Kim. Although Kim's conduct is "unbecoming", a reasonable person in Stork's position would not necessarily feel compelled to resign as a result of Kim's treatment of Stork. Accordingly, Stork's claims of constructive discharge were properly dismissed.

## MOTION FOR RECONSIDERATION

Following the conclusion of the case, the trial court issued a letter opinion dated June 30, 1987, ruling that International Bazaar and Hong were liable for age discrimination in the promotion decision. Under the trial judge's personal rules regarding procedures for posttrial matters in his court, a motion for reconsideration was to be filed within 15 days after the written or oral decision. After this time period had expired, the defendants moved for reconsideration. Stork opposed the motion as untimely. The court recognized that the motion was filed late under its special rule, but did not deny the motion on timeliness grounds because the rule was not jurisdictional and there was no showing of prejudice to Stork. The court then went on to reverse its earlier ruling.

On appeal, Stork argues that the defendant's motion for reconsideration should have been denied because it was not made within the time period established by the trial judge's personal court rule. This rule is inconsistent with CR 59(b) and therefore CR 59(b) is controlling. *See Hessler Constr. Co. v. Looney*, 52 Wn. App. 110, 112, 757 P.2d 988 (1988). Under CR 59(b), a motion for reconsideration may

be filed within 10 days after entry of the judgment. Here, no judgment had yet been entered when the defendants served and filed their motion for reconsideration. Therefore, the motion was timely under CR 59(b) and will be upheld.

## FRIVOLOUS APPEAL

■ The defendants seek recovery of attorney fees, costs, and sanctions under RAP 18.1 and RAP 18.9 on the basis that Stork's appeal is frivolous.

When an appellant files a frivolous appeal, the respondent is entitled to sanctions and attorneys' fees pursuant to RAP 18.9. An appeal is frivolous if, considering the record as a whole and resolving all doubts in favor of the appellant, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal. *Boyles v. Department of Retirement Sys.*, 105 Wn.2d 499, 506–07, 716 P.2d 869 (1986).

*Hotel Employees Local 8 v. Jensen*, 51 App. 676, 690–91, 754 P.2d 1277 (1988).

This appeal is not frivolous. A genuine issue exists regarding whether the direct evidence theory was raised below and, if it was, whether it is to be applied in Washington. Accordingly, the defendants' request is denied.

We affirm the judgment below.

WEBSTER and FORREST, JJ., concur.