[No. 19957-2-II.   Division Two.   July 11, 1997.]

THE STATE OF WASHINGTON, *Petitioner*, v. WALTER E. KNOX, *Respondent.*

Russell D. Hauge, Prosecuting Attorney, and Pamela B. Loginsky, Deputy, for petitioner.
Vernon A. Smith, for respondent.

SEINFELD, J. — Walter Knox challenged his district court conviction for being in physical control of a vehicle while under the influence of intoxicants, appealing the case to superior court. In a memorandum decision, the superior court reversed the conviction, reasoning that the arresting officer had obtained evidence improperly. Fifty-one days later, the superior court entered an order reversing the conviction and remanding the matter to district court. We granted the State's motion for discretionary review and now hold that the State's motion for discretionary review, filed within 30 days of the superior court's order, was timely. Further, the officer's request that Knox roll down his vehicle window was not a seizure. Thus, we reverse.

## FACTS

On April 17, 1994, at about 2:45 a.m., the Washington State ferry docked at Winslow on Bainbridge Island. Trooper Daniel Presba was on the car deck waiting for vehicles to disembark when he noticed a ferry worker's unsuccessful attempts to awaken the driver of a truck that was blocking departing vehicles.

Concerned by the lack of a response, Presba approached

the truck from the driver's side and saw Walter Knox with his head resting on the headrest and his eyes closed. Just as Presba was about to knock, Knox "awoke abruptly, and sat up and looked straight ahead, doing nothing." Presba observed that Knox's eyes were watery and bloodshot; he appeared to be in a stupor; the truck was out of gear and the emergency brake disengaged; and the engine was not running. Meanwhile, the traffic behind Knox could not move.

Presba motioned several times for Knox to roll his window down. When Knox finally responded, Presba was greeted with the strong odor of alcohol. He asked Knox if he was okay, to which Knox replied, "I'm fine." Knox then started the vehicle and again stated he was fine, but followed this with the inquiry, "Where am I?"

Concerned about Knox's ability to drive, Presba asked Knox to turn off the engine; Knox did not comply, but continued to stare straight ahead. At that point, Presba unlocked and opened Knox's door, planning to turn the engine off. Knox, however, finally responded to Presba's request and turned the engine off himself.

After Presba asked Knox how much he had had to drink, and Knox replied, "[A] good fair enough," Presba had Knox move to the passenger seat and Presba drove the vehicle off the ferry to the end of the loading ramp. There, Presba administered sobriety tests; Knox performed poorly on the tests. Based on these events, Presba arrested Knox, charging him with being in control of a vehicle while under the influence. RCW 46.61.504.

Knox moved to suppress the evidence obtained as a result of the contact, contending that Presba lacked probable cause to make the initial contact. The district court denied the motion and, after hearing the case on stipulated facts, found Knox guilty as charged.

Knox appealed to superior court. On August 2, 1995, the superior court filed a memorandum decision reversing the conviction. It determined that Knox's encounter with Presba constituted an unlawful search and seizure.

On August 27, the State sent defense counsel a proposed order reversing the conviction and remanding the matter to district court. Receiving no response, the State noted the order for entry on September 22. The superior court judge signed the order on that date.

On October 5, 1995, the State filed a notice for discretionary review. Knox opposed the grant of review and argued for dismissal of the petition, asserting that it was untimely. A commissioner of this court denied the motion to dismiss without prejudice and granted review.

## I

### TIMELINESS OF STATE'S PETITION FOR REVIEW

Knox renews his motion to dismiss, arguing that we lack jurisdiction to review this matter because the State failed to file its notice for discretionary review within 30 days of the trial court's memorandum decision

RAP 2.3(d) authorizes discretionary review of an appeal from a court of limited jurisdiction. A petitioner must file a notice for discretionary review "within 30 days after the act of the trial court which the party . . . wants reviewed." RAP 5.2(b). Here, the State filed its notice more than 30 days after the superior court's memorandum decision but within 30 days of its order of dismissal and remand.

RAP 5.2(c) directs us to look to CR 5(e) and CR 58 to determine the "date of entry of a trial court decision." We obtain no guidance from CR 5(e), which merely defines the term "filing with the court." But CR 58 discusses "Entry of Judgment." CR 54(a)(1) defines the word "judgment" as follows:

> A judgment is the final determination of the rights of the parties in the action and includes any decree and order from which an appeal lies. A judgment shall be in writing and signed by the judge and filed forthwith as provided in rule 58.

RALJ 9.1(g), which describes the form for a superior court decision following review of a matter that originated

in a court of limited jurisdiction, requires that "The decision of the superior court shall be in writing and filed in the clerk's office with the other papers in the case. The reasons for the decision shall be stated." RALJ 9.1(h) provides, "The decision of the superior court on appeal is subject to discretionary review pursuant to RAP 2.3(d)."

The superior court's "Memorandum Decision" in this case superficially satisfies the RALJ requirements for a "decision." Its prefatory paragraph states the nature of the matter and the date the matter was before the court; it next describes the facts and the issue before the court; it then provides a legal analysis of the issue; and it concludes with the following statement: "For the reasons stated above, the court reverses the District Court ruling denying the defendant's motion to suppress based on an unlawful search and seizure. The court remands this case to the District Court for further proceedings in accordance with this decision." Finally, the memorandum decision is dated and signed by the superior court judge.

Although the memorandum decision appears to satisfy the RALJ and contains most of the necessary elements of an order or judgment, it does not contain a caption entitling it an order or judgment. Nor does it order that any action take place. While these omissions may seem insignificant, CR 54(e) requires a formal order or judgment. *Department of Labor & Indus. v. City of Kennewick,* 99 Wn.2d 225, 228, 661 P.2d 133 (1983). Further, this case illustrates how the absence of a formal order leaves the parties and court uncertain as to whether a court-filed document is a final reviewable decision.

The *Kennewick* court determined that a memorandum decision entered by a superior court acting in its appellate capacity is not a "final decree," as that term was used in former RCW 51.48.140 (1989). 99 Wn.2d at 229-31. In reversing the Court of Appeals, the *Kennewick* court applied CR 54(e), reasoning that "Application of CR 54(e) . . . promotes uniformity and certainty. We see no apparent hardship on the prevailing party to present a formal

order." 99 Wn.2d at 229. The *Kennewick* court then quoted from Judge Munson's dissent in the appellate court. We also find Judge Munson's words persuasive:

> As a practical matter, the bar should not have to act as soothsayers to determine when a written trial court opinion or decision might be a final judgment. For the sake of uniformity, the better practice is to follow CR 54; the prevailing party should submit a proposed judgment, decree or order, with appropriate notice and service upon the opposing party. All parties are then aware of the status of the proceeding and can consider the applicability of post-judgment motions such as motions for reconsideration, CR 59(b), appeals under RAP 2.2, and other time-limited procedures hinging upon entry of judgment.

*Department of Labor & Indus. v. City of Kennewick,* 31 Wn. App. 777, 783, 644 P.2d 1196 (1982), *rev'd by Kennewick,* 99 Wn.2d at 225. *See also Corrigal v. Ball & Dodd Funeral Home, Inc.,* 89 Wn.2d 959, 961, 577 P.2d 580 (1978); *Marsh v. Commonwealth Land Title Ins. Co.,* 57 Wn. App. 610, 619, 789 P.2d 792 (1990).

Knox cites authority that is neither on point nor supportive of his position. For example, he argues that the court in *King County v. Williamson,* 66 Wn. App. 10, 830 P.2d 392 (1992) calculated timeliness by looking to the date of a trial court's "decision" rather than the date of its final order. The *Williamson* court, however, was referring to a final judgment, not a memorandum decision. Thus, its use of the word "decision" has no significance here.

Knox's cite to *Stork v. International Bazaar, Inc.,* 54 Wn. App. 274, 774 P.2d 22 (1989), is misleading. The *Stork* court rejected use of the memorandum decision date. Instead, it interpreted the civil rule to require the use of the final judgment as the trigger date.

Thus, the memorandum opinion in this case does not constitute a final judgment and, consequently, does not satisfy the definition of the term "decision" as that word is used in RAP 2.3(d) and RAP 5.2(c). But the

superior court's September 22 order of reversal and remand satisfies both CR 54(e) and RALJ 9.1(g). It incorporates by reference the superior court's reasons contained in its memorandum decision, and it clearly orders reversal and remand both in its caption and within its body. Thus, the September 22 order is the "decision" on review and the State's notice for discretionary review was timely.

## II

### CONSENSUAL ENCOUNTER

The fourth amendment to the United States Constitution and article I, section 7 of the state constitution protect citizens from unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979); *State v. Kennedy*, 107 Wn.2d 1, 726 P.2d 445 (1986). Not every citizen encounter with police, however, rises to the level of a seizure. *State v. Mennegar*, 114 Wn.2d 304, 310, 787 P.2d 1347 (1990). A police contact constitutes a seizure only if, under the totality of the circumstances, a reasonable person would not have felt free to leave, "terminate the encounter, refuse to answer the officer's question, or otherwise go about his business." *State v. Thorn*, 129 Wn.2d 347, 352-53, 917 P.2d 108 (1996).

The determination of whether a seizure has occurred is a mixed question of law and fact. *Thorn*, 129 Wn.2d at 351. Thus, the reviewing court accords great deference to the trial court's findings of fact, but reviews the question of whether those facts constitute a seizure de novo. *Thorn*, 129 Wn.2d at 351. The person who claims that a seizure occurred bears the burden of proving it. *Thorn*, 129 Wn.2d at 354.

Police activities such as engaging a citizen in conversation, identifying themselves as officers, or simply requesting identification do not convert a casual encounter into a seizure. *Florida v. Royer*, 460 U.S. 491, 498, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983); *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497

(1980); *Mennegar*, 114 Wn.2d at 310-11. On the other hand, the threatening presence of several officers, the display of a weapon, touching the defendant, and commanding language or tone of voice suggest that the encounter may have constituted a seizure. *Mendenhall*, 446 U.S. at 554. But the subjective intent of the police is irrelevant, except insofar as it is conveyed to the defendant. *Mendenhall*, 446 U.S. at 554. Instead, we consider the officer's actual conduct and whether it reasonably appeared to be coercive. *Thorn*, 129 Wn.2d at 353.

Here, Knox was asleep behind the wheel of his truck while it was parked on the deck of a ferry, and it appeared that a ferry employee could not awaken him. Further, the Knox vehicle was blocking the disembarkation of other vehicles in his row. Presba approached to determine the problem and to help.

Because of concerns about the effort it took to awaken Knox, Knox's apparently disoriented state upon awaking, and the physical signs of intoxication, Presba wanted to verify that Knox was in a safe condition to drive. Consequently, he requested that Knox roll down the window. Presba then asked Knox whether he was okay. After observing further unusual behavior, Presba asked Knox how much he had to drink.

These facts are similar to those in *Thorn*, a case in which the court held that the officer's conduct did not constitute a seizure of the defendant. In *Thorn*, a police officer observed a "flicker of light" inside a car parked legally in a parking lot. The officer described the light as similar to the light that emanates from a drug pipe. Approaching the car on foot, the officer asked the driver, "Where is the pipe?" Subsequently, the officer discovered evidence of a drug crime.

The *Thorn* court noted that the defendant did not provide any facts suggesting that the officer's tone of voice, body language, or manner were coercive. Thus, it concluded that considering the totality of the circumstances, a reasonable person would have believed that he was free

to leave or could refuse to answer the officer's question. Consequently, the defendant was not seized and his Fourth Amendment rights were not implicated by the officer's contact. *Thorn*, 129 Wn.2d 347.

█ The officer's contact here was no more invasive than was the officer's question in *Thorn*. As in *Thorn*, there was nothing about the officer's manner that was coercive. As in *Thorn*, Knox could have refused to answer. Nor are we persuaded by Knox's argument that the encounter was coercive because he was "stopped" while in a vehicle, as opposed to being a pedestrian who might feel more free to walk away. This distinction dissipates when the vehicle is parked in a public place. *United States v. Kim*, 25 F.3d 1426, 1430 (9th Cir. 1994).[1] Thus, Knox has failed to meet his burden of proof to establish that the encounter constituted a seizure.

Because we conclude that the encounter did not constitute a seizure, we do not consider the State's alternative argument that this was a valid *Terry* stop. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

We reverse.

HOUGHTON, C.J., and ARMSTRONG, J., concur.

---

[1]*See also State v. Zubizareta*, 122 Idaho 823, 839 P.2d 1237 (1992) (no seizure where officer approached parked vehicle and requested motorist to roll down window and turn off engine); *In re Matter of Clayton*, 113 Idaho 817, 748 P.2d 401 (1988) (officer's actions to determine whether driver slumped forward in slumber in vehicle with its motor running and lights on was prudent and within officer's caretaking function); *People v. Murray*, 137 Ill. 2d 382, 560 N.E.2d 309, 313-14 (1990) (no seizure where officer approached a car in which an individual was sleeping and tapped on window or asked the individual to roll down window; request that driver who just woke up provide identification or step out of car for purpose of determining ability to drive is proper); *State v. Kersh*, 313 N.W.2d 566, 568 (Iowa 1981) (survey of cases from other jurisdictions regarding the propriety of police opening a vehicle to determine whether an unconscious or disoriented person is in distress); *Commonwealth v. Leonard*, 422 Mass. 504, 663 N.E.2d 828 (no seizure where officer opened unlocked door of car parked in breakdown area adjacent to highway after driver failed to respond to attempts to get his attention), *cert. denied*, 117 S. Ct. 199 (1996).