**FILED**
**SEPTEMBER 10, 2019**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36648-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| TRACEY KIMBERLY BAILEY, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — We review a common question of whether a law enforcement officer possessed reasonable articulable suspicion when conducting a *Terry* stop. We hold the officer had reasonable suspicion and affirm appellant Tracey Bailey's conviction. We remand for correction of her offender score and the striking of some legal financial obligations.

FACTS

Since Tracey Bailey challenges her seizure by a law enforcement officer, we garner our facts from a motion to suppress hearing. On June 29, 2014, at 1:30 a.m., David Brown called Thurston County's 911 service to report an unwanted person at his

home.  Brown identified his address.  Emergency dispatch immediately sent Thurston County Sheriff Deputy James Esslinger to Brown's residence.  Brown continued to speak to dispatch, and dispatch forwarded the information to Deputy Esslinger.

David Brown reported to emergency dispatch that a black female named Tracey, approximately five foot ten inches and wearing a multi-colored sweater, arrived, with mattress in hand, at his residence via taxi.  Brown added that he had earlier allowed Tracey to stay at his residence, but that she was no longer welcome.  Brown then reported that Tracey had left the vicinity, but soon thereafter commented that "she's back in the house."  Report of Proceedings (RP) (Aug. 14, 2017) at 9.  Brown also claimed that Tracey had once crawled in a window to gain access to the residence.  Brown never suggested that Tracey was violent.

Deputy James Esslinger last heard that Tracey had left the property by foot.  As he proceeded, he deemed himself investigating a trespass and perhaps a domestic violence incident or a burglary.  He sometimes delivers trespass warnings to citizens.

Two-tenths of a mile from David Brown's residence, Deputy James Esslinger observed a person, matching the description Brown gave to dispatch, walking along the road.  The road lacked sidewalks but maintained dirt shoulders.  Deputy Esslinger stopped his vehicle.  He does not remember if he stopped in front of the woman or behind her.  The deputy's front headlights shined.  Deputy Esslinger stepped from his patrol car

2

and asked the woman: "Are you Tracey?" RP (Aug. 14, 2017) at 18. The woman replied affirmatively, so Esslinger asked her to come to him.

When Tracey approached Deputy James Esslinger, he asked her for identification. Tracey indicated she lacked any identification. She volunteered her full name, Tracey Bailey, and date of birth. Deputy Esslinger returned to his patrol car, and he entered the information Bailey provided into his computer. Bailey remained illuminated by the car's headlights, as she stood in front of the patrol vehicle, such that she kept within Esslinger's line of sight. Deputy James Esslinger did not then place Bailey in handcuffs nor otherwise restrain her freedom of movement. Esslinger had not directed Bailey to remain in front of the car or told her she could not leave.

Deputy James Esslinger's computer search revealed two outstanding warrants for Tracey Bailey. Deputy Esslinger asked dispatch to confirm the warrants. He then exited his car and spoke again to Bailey.

Thurston County Sheriff Deputy Micah Rose responded to the scene while Deputy James Esslinger waited for confirmation from dispatch of the arrest warrants. Dispatch confirmed one of the warrants, so Deputy Esslinger placed Tracey Bailey under arrest. Esslinger searched Bailey's person incident to the arrest. In Bailey's right rear pants pocket, Deputy Esslinger found wadded bills, inside which lay a small Ziploc "baggie"

containing a white powdery substance. A crime lab analyst later identified the substance as methamphetamine.

Deputy James Esslinger asked Deputy Micah Rose to travel to the reported address, speak with David Brown, and ascertain whether a trespass occurred. The sheriff deputies later concluded that Tracey Bailey had not committed a crime against Brown.

PROCEDURE

The State of Washington charged Tracey Bailey with unlawful possession of a controlled substance, methamphetamine. The State brought no charges for trespass. Bailey moved the court to suppress the evidence recovered from her seizure by Deputy James Esslinger and to dismiss the charge of unlawful possession of a controlled substance.

At the suppression motion hearing, the State asserted that Deputy James Esslinger conducted a *Terry* stop, rather than a community caretaking encounter. The parties disagreed on whether reasonable suspicion supported the *Terry* stop. The trial court concluded that Deputy Esslinger held reasonable suspicion to contact Tracey Bailey and denied the motions to suppress and dismiss.

In response to the motion to suppress, the superior court entered findings of fact under CrR 3.6. One finding reads:

2.     On June 29, 2014, dispatch received a 911 call to report an unwanted person in the 5600 block of Old Highway 410.  Dispatch reported the unwanted person an African-American female, 5 foot, 10 inches, named "Tracey," and wearing a multi-colored sweater.  The report was that she had arrived at the reporting party's house via a taxi, carrying a mattress.  *The reporting party stated he had asked Tracy [sic] to leave*, then after she had left, she returned.  The reporting party also stated, she had entered his house via a window in the past.

Clerk's Papers (CP) at 105 (emphasis added).

At trial, Tracey Bailey testified that she did not know she possessed the methamphetamine.  The trial court instructed the jury on the defense of unwitting possession.  The jury found Bailey guilty.

Based on an offender score of eight, the trial court sentenced Tracey Bailey to a standard range sentence of sixteen months' confinement.  The sentencing court imposed legal financial obligations, including a $200 criminal filing fee and a $100 DNA collection fee.  Earlier, in 2015, the court had ordered Bailey to pay a $100 warrant service fee.  The trial court found Bailey indigent and allowed her to appeal at public expense.

## LAW AND ANALYSIS

Tracey Bailey challenges her conviction and her sentence.  We address her conviction first.

5

Validity of Stop

In an effort to reverse her conviction for possession of a controlled substance, Tracey Bailey argues that Deputy James Esslinger unlawfully seized her. Therefore, according to Bailey, the discovery of the methamphetamine flowed from an unlawful seizure such that the superior court should have suppressed the evidence. Bailey does not deem her arrest after Deputy Esslinger learned of the arrest warrant to constitute the unlawful seizure. She instead identifies Esslinger's approaching her and asking her questions as the unlawful seizure.

We question whether Deputy James Esslinger ever seized Tracey Bailey within the meaning of the state and federal constitutions. Esslinger never told Bailey she could not leave his presence and never took from Bailey any identification card while researching her name in his patrol car's computer. *State v. Knox*, 86 Wn. App. 831, 838, 939 P.2d 710 (1997), *overruled on other grounds by State v. O'Neill*, 148 Wn.2d 564, 62 P.3d 489 (2003); *State v. Hansen*, 99 Wn. App. 575, 577, 994 P.2d 855 (2000). A law enforcement officer needs no cause to question a citizen unless the officer seizes the citizen. *State v. Harrington*, 167 Wn.2d 656, 663, 222 P.3d 92 (2009). Still, the State agrees that James Esslinger performed a *Terry* stop, considered to be a seizure. Thus, we ask whether Esslinger held cause to conduct the stop.

Tracey Bailey's assignment of error raises two distinct questions. First, did the information provided by David Brown supply reasonable suspicion of a crime in order to support an investigative *Terry* stop? Second, did law enforcement possess reason to believe the caller, David Brown, to be a reliable source of information?

Reasonable Suspicion of Crime

In general, warrantless seizures are per se unconstitutional, and the burden falls on the State to demonstrate that a warrantless seizure falls into a narrow exception to the rule. *State v. Doughty*, 170 Wn.2d 57, 61, 239 P.3d 573 (2010). Courts purportedly jealously and carefully construe the exceptions. *State v. Doughty*, 170 Wn.2d at 61.

A brief investigatory seizure, commonly referred to as a *Terry* stop, constitutes an exception to the warrant requirement. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Under this exception, a police officer may, without a warrant, briefly detain an individual for questioning if the officer possesses reasonable and articulable suspicion that the person is engaging or is about to engage in criminal activity. *State v. Fuentes*, 183 Wn.2d 149, 158, 352 P.3d 152 (2015). A reasonable, articulable suspicion means a substantial possibility that criminal conduct has occurred or is about to occur. *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986).

A valid *Terry* stop requires that the officer have a well-founded, reasonable suspicion that criminal activity is afoot based on specific and articulable facts. *State v.*

*Fuentes*, 183 Wn.2d at 158. This court looks at the totality of the circumstances known to the officer at the time of the stop when evaluating the reasonableness of the officer's suspicion. *State v. Glover*, 116 Wn.2d 509, 514, 806 P.2d 760 (1991). Subsequent evidence that the officer was in error regarding some of the facts will not render a *Terry* stop unreasonable. *State v. Seagull*, 95 Wn.2d 898, 908, 632 P.2d 44 (1981). A *Terry* stop also is not rendered unreasonable solely because the officer did not rule out all possibilities of innocent behavior before initiating the stop. *State v. Anderson*, 51 Wn. App. 775, 780, 755 P.2d 191 (1988).

Washington courts have repeatedly held that a person's walking at night, even in a high crime area, does not, by itself, give rise to a reasonable suspicion to detain that person. *State v. Fuentes*, 183 Wn.2d at 161 (2015); *State v. Doughty*, 170 Wn.2d at 62; *State v. Larson*, 93 Wn.2d 638, 645, 611 P.2d 771 (1980). Instead, the circumstances must suggest a substantial possibility that the particular person has committed a specific crime or is about to do so. *State v. Martinez*, 135 Wn. App. 174, 180, 143 P.3d 855 (2006). An inarticulate hunch does not warrant police intrusion into a person's life. *State v. Doughty*, 170 Wn.2d at 63. Innocuous facts do not justify a stop either. *State v. Armenta*, 134 Wn.2d 1, 13, 948 P.2d 1280 (1997).

When evaluating investigative stops, this court must determine whether the initial interference with the suspect's freedom of movement was reasonably related in scope to

the circumstances that justified the interference. *Terry v. Ohio*, 392 U.S. at 19-20 (1968). In determining the proper scope of the intrusion, the court considers the purpose of the stop, the amount of physical intrusion, and the length of time the law enforcement officer detains the suspect. *State v. Williams*, 102 Wn.2d 733, 740, 689 P.2d 1065 (1984). When reviewing the merits of an investigatory stop, a court must evaluate the totality of circumstances presented to the investigating officer. *State v. Doughty*, 170 Wn.2d at 62.

Courts recognize that crime prevention and crime detection are legitimate purposes for investigative stops. *Terry v. Ohio*, 392 U.S. at 22-23. Here, the relevant concern was crime detection rather than crime prevention. A typical *Terry* stop entails a frisk for weapons and brief questioning. *State v. Mitchell*, 80 Wn. App. 143, 145, 906 P.2d 1013 (1995).

Tracey Bailey challenges finding of fact two that "[t]he reporting party stated, he had asked Trac[e]y to leave, then after she had left, she returned." CP at 105. Bailey argues that substantial evidence does not support this finding because no testimony supports that David Brown asked Bailey to leave his premises. We agree. Brown informed the 911 dispatcher of an unwanted person at his residence, but no testimony established that Brown told Bailey to leave.

Tracey Bailey subsequently argues that, without the erroneous portion of finding of fact two, the remaining findings do not support the conclusion that Deputy James

9

Esslinger held reasonable suspicion of criminal trespass. To support her argument,

Tracey Bailey cites *State v. Watson*, 56 Wn. App. 665, 666, 784 P.2d 1294 (1990),

wherein the court wrote:

> When the State successfully resists a motion to suppress, it is obligated to procure findings of fact and conclusions of law that, *standing on their own*, will withstand appellate scrutiny.

To support its proposition, the *Watson* court cited *State v. Poirier*, 34 Wn. App.

839, 841, 664 P.2d 7 (1983). In *State v. Poirier*, the court cited to CrR 3.6 for the rule

that findings of fact standing alone must withhold appellate scrutiny. Nevertheless,

CrR 3.6, assuming it once did, no longer supports this principle. The 1983 version of the

criminal rules might have contained the proposition. But, by 1984, CrR 3.6 did not

support the statement, nor has any version of the rule since supported the principle.

Even if the findings do not state that David Brown asked Tracey Bailey to leave

his premises, we still conclude that Deputy James Esslinger held reasonable suspicion for

a *Terry* stop. A person is guilty of criminal trespass in the first degree, if he or she

*knowingly* enters or remains unlawfully in a building. RCW 9A.52.070(1). A person

commits second degree trespass if he or she knowingly enters or remains unlawfully on

premises of another. RCW 9A.52.080(1).

Tracey Bailey cites no law stating that a police officer must gather incontrovertible

evidence of a crime during the investigation stage. To the contrary, the purpose of an

investigation and an investigatory stop is to assess whether a suspect committed a crime. The standard for reasonable suspicion is whether an objective view of the facts led the officer to believe the substantial possibility of a crime being committed. Deputy James Esslinger knew that an "unwanted person" had returned to a residence. This person had previously entered the home through a window. The report could lead one to reasonably deduce a substantial possibility of a trespass to investigate.

Deputy James Esslinger's stop of Tracey Bailey was reasonable because it was limited in nature. The officer never handcuffed Tracey Bailey. Esslinger only asked for identification and then researched her name in his computer. Bailey could have ignored Esslinger. Instead, Bailey voluntarily provided her full name and birthdate.

Reliability

Tracey Bailey also argues that the trial court's findings of fact do not show the reliability of the 911 caller's tip. In response, the State contends this appeals court cannot review Bailey's reliability argument because she did not raise the assertion before the superior court. The State avers that Bailey limited her legal position below to the information supplied failing to support reasonable articulable suspicion.

We agree that legal argument at the suppression hearing centered on the sufficiency of the information. The State, however, addressed the 911 caller's reliability in its briefing to the superior court by citing *Navarette v. California*, 572 U.S. 393, 134 S.

11

Ct. 1683, 188 L. Ed. 2d 680 (2014). Both parties cited to *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986) for the proposition that a *Terry* stop is justified only with a substantial possibility that criminal activity occurred, and Bailey maintains that *Kennedy* also addressed the reliability of an informant as part of its analysis.

When the issue raised for the first time on appeal arguably relates to issues raised in the trial court, this court may exercise its discretion to consider newly articulated theories for the first time on appeal. *Wilcox v. Basehore*, 189 Wn. App. 63, 90, 356 P.3d 736 (2015), *aff'd*, 187 Wn.2d 772, 389 P.3d 531 (2017). The reliability of the 911 caller intrinsically intertwines with the circumstances a court considers when assessing the constitutionality of a stop based on an informant's tip. Finally, this court may address, for the first time on appeal, a manifest constitutional error. RAP 2.5(a)(3). Therefore, we determine to address the informant reliability issue raised by Tracey Bailey.

When an officer bases his or her suspicion on an informant's tip, the State must show that the tip bears some indicia of reliability under the totality of the circumstances. *State v. Z.U.E.*, 183 Wn.2d 610, 618, 352 P.3d 796 (2015). We require either (1) circumstances establishing the informant's reliability, or (2) some corroborative observation, usually by the officers, that shows either (a) the presence of criminal activity or (b) that the informer's information was obtained in a reliable fashion. *State v. Sieler*, 95 Wn.2d 43, 47, 621 P.2d 1272 (1980). The corroborative observations do not need to

be of blatant criminal activity, but they must corroborate more than just innocuous facts, such as an individual's appearance or clothing. *State v. Wakeley*, 29 Wn. App. 238, 241-43, 628 P.2d 835 (1981).

Known citizen informants are generally presumed to be reliable, but this presumption does not extend to anonymous informants. *State v. Saggers*, 182 Wn. App. 832, 840, 332 P.3d 1034 (2014). The reliability of an anonymous telephone informant is similar to the reliability of a named but unknown telephone informant because such an informant could fabricate an alias and thereby remain, like an anonymous informant, unidentifiable. *State v. Sieler*, 95 Wn.2d at 48 (1980). Officers may not presume an informant's tip is an eyewitness account. *State v. Vandover*, 63 Wn. App. 754, 759, 822 P.2d 784 (1992).

Tracey Bailey relies on a series of Washington decisions that we now discuss: *State v. Z.U.E.*, 183 Wn.2d 610 (2015), *State v. Sieler*, 95 Wn.2d 43 (1980), and *State v. Lesnick*, 84 Wn.2d 940, 530 P.2d 243 (1975).

In *State v. Lesnick*, 84 Wn.2d 940, the Supreme Court held that an anonymous tip alleging that the defendant was attempting to sell illegal gambling punchboards out of his van did not justify stopping the van because the tipster did not identify himself and did not provide any information as to the source of his knowledge.

In *State v. Sieler*, 95 Wn.2d 43, an identified caller to emergency dispatch reported a drug sale in a school parking lot. The informant gave a description of the car involved in the sale, but did not provide any factual basis for his belief that a sale had occurred. Based on this tip alone, officers stopped a car located near the school that matched the given description. Even though the informant provided his name, the Supreme Court characterized the informant as essentially anonymous and concluded the informant's report lacked sufficient indicia of reliability because neither its veracity nor its factual basis could be established.

In *State v. Z.U.E.*, 183 Wn.2d 610, police officers stopped a car to investigate a minor in possession of a firearm. A person identifying herself as Dawn made a 911 call reporting the crime. The 911 call was made contemporaneous to the unfolding of the events. The caller's allegation that the female was 17 years old and, therefore, a minor was the only fact that potentially made the girl's possession of the gun unlawful. Nevertheless, the caller did not disclose the basis for her believing the girl to be underage or the basis for concluding the girl possessed a gun. The court followed *Sieler* and held the 911 caller's assertion did not created a sustainable basis for a *Terry* stop.

Based on these three decisions, Tracey Bailey argues that Sheriff Deputy James Esslinger lacked any information regarding the source of David Brown's knowledge and the superior court's findings did not establish that the caller eyewitnessed Bailey's

14

behavior. Nevertheless, Deputy James Esslinger did not merely presume David Brown to be an eyewitness. Although not contained in the court's findings, substantial evidence in the record supports the conclusion that the caller was an eyewitness. While on the phone with 911, David Brown stated that Bailey had left the premises. The dispatcher continued to gather information when the caller commented that Tracey was "back in the house." RP (Aug. 14, 2017) at 9. The caller could not know whether Bailey had returned to the house unless he was an eyewitness who was present to see Bailey reappear. The information supplied by the caller showed an ongoing view of activity.

We rely in part on *Navarette v. California*, 572 U.S. 393 (2014). In *Navarette*, the caller's report that the defendant's pickup truck ran her off the road sufficed to support a stop of the suspected drunk driver. Several factors supported the caller's reliability: the caller was an eyewitness, she made the report contemporaneously to the incident, and she called the emergency 911 line, making her accountable for the provided information since police can trace those calls.

All of the *Navarette v. California* factors blanket David Brown's call to emergency dispatch. David Brown called the emergency 911 line. Brown called contemporaneously to the incident. He provided an address and a description of the woman who was thereafter found .2 miles away from the address. Brown stated he had allowed Bailey to stay at the residence in the past. Thus, the information available to the

15

deputy supports the conclusion that the caller was the alleged victim of the unwanted person on his property.

Tracey Bailey also emphasizes that no independent police corroboration supported reasonable suspicion. Nevertheless, police corroboration is not necessary. The Washington Supreme Court requires either circumstances establishing the informant's reliability *or* some corroborative observation. *State v. Z.U.E.*, 183 Wn.2d at 618 (2015). Sufficient facts supported the informant's reliability and the substantial possibility of criminal behavior.

Sentence

Offender Score

Tracey Bailey contends the trial court erred when it included a prior conviction for attempted forgery in her offender score. The completed crime of forgery is a class C felony. RCW 9A.60.020(3). But, pursuant to RCW 9A.28.020(3)(d), an attempt to commit a crime is a gross misdemeanor when the crime attempted is a class C felony. Gross misdemeanors are not added to the offender score. Accordingly, Bailey's offender score should have been seven, not eight.

The State concedes that the trial court erred by including the gross misdemeanor offense in Bailey's offender score. Yet, the State argues the error is harmless because it did not affect Bailey's standard range. The State emphasizes that the crime of possession

of a controlled substance, methamphetamine, has a seriousness level of drug offense level one so that the standard range remains the same with an offender score between six and nine. RCW 9.94A.525(7); RCW 9.94A.517.

Divisions One and Two of this court disagree as to whether an incorrect offender score can be harmless. In *State v. Argo*, 81 Wn. App. 552, 569, 915 P.2d 1103 (1996), Division One held that an erroneous offender score that does not affect the standard range is harmless. In *State v. McCorkle*, 88 Wn. App. 485, 945 P.2d 736 (1997), *aff'd*, 137 Wn.2d 490, 973 P.2d 461 (1999), Division Two held that the State's failure to prove six prior out-of-state convictions were comparable to Washington felonies and resulted in the trial court's miscalculation of the offender score. The State argued that establishing nine prior felonies rather than 13 was harmless error since the standard range for an offender score of nine is the same as the standard range for an offender score of 13. The court held the error was not harmless because "the record does not clearly indicate that the sentencing court would have imposed the same sentence without the prior unclassified prior convictions and the resultant change in offender score." *State v. McCorkle*, 88 Wn. App. at 499-500.

We choose to follow *State v. McCorkle*. We also deem the error harmful in that, in the event of another conviction, the State may argue that Bailey is bound by the court's determination of our offender score in this prosecution.

17

Although Tracey Bailey originally requested a remand for resentencing, Bailey now notes her release from custody. Therefore, resentencing is no longer required. As will be explained below, the trial court must strike legal financial obligations from the judgment and sentence so the erroneous offender score could be corrected at the same time with minimal effort. The remedy for an incorrect offender score based on a scrivener's error is correction of the score. *State v. Calhoun*, 163 Wn. App. 153, 169-70, 257 P.3d 693 (2011).

Discretionary Costs

At sentencing, the trial court imposed on Tracey Bailey a $200 criminal filing fee and a $100 DNA fee. At that time, the fees were mandatory. As explained in *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), due to legislative changes, the fees are no longer mandatory. In fact, the new legislation "categorically prohibit[s] the imposition of any discretionary costs on indigent defendants." *State v. Ramirez*, 191 Wn.2d at 739. The trial court found Tracey Bailey indigent.

The Supreme Court held that the new amendments apply prospectively to cases pending on direct appeal because the imposition of legal financial obligations is governed by the statutes in effect at the termination of the case, and those cases were not final at the time the statute was enacted. *State v. Ramirez*, 191 Wn.2d at 749-50. Defense counsel states Bailey's DNA sample was previously collected based on other felony

18

convictions. Thus, *Ramirez* supports the conclusion that a remand to the trial court is necessary so it can strike the two fees. The State agrees to an order requiring the court to strike the fees.

Tracey Bailey also argues a $100 warrant service fee should be struck. Bailey notes the discretionary nature of the fee: "Expenses incurred for serving of warrants for failure to appear . . . *may* be included in costs the court *may* require a defendant to pay." RCW 10.01.160(2) (emphasis added); *see State v. Malone*, 193 Wn. App. 762, 764, 376 P.3d 443 (2016). The State does not oppose striking the warrant service fee. Nevertheless, we do not accept the State's concession on this obligation.

The trial court imposed the warrant service fee in 2015. Imposition of the fee is not included nor mentioned on the judgment and sentence from which Bailey currently appeals. As a result, the imposition of the fee is final and is not at issue in this appeal. *State v. Ramirez* is inapplicable to this fee.

CONCLUSION

We affirm the superior court's denial of Tracey Bailey's motion to suppress evidence of the methamphetamine. We affirm her conviction. We remand to the trial court to correct Bailey's offender score and to strike the imposition of the DNA collection fee and the criminal filing fee.

No. 36648-1-III
*State v. Bailey*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.

20