IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | |
| | ) | No. 31454-5-III |
| HASAN TAHAT, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | OPINION PUBLISHED IN PART |
| | ) | |
| MARY ROSE TAHAT, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — In this marriage dissolution appeal, we resolve two related procedural questions (1) was a letter ruling by the trial court a "decision" for purposes of commencing the period in which a party must file a motion for reconsideration under CR 59 and (2) whether a trial court should allow the nonmoving party an opportunity to respond before the trial court grants a motion for reconsideration. We answer the first question in the negative and the second question in the affirmative.

## FACTS

The parties, Mary Rose and Hasan Tahat, met as graduate students in the Philippines. Mary received her doctorate in molecular and cellular protozoology. Hasan received his masters in engineering. The couple married in 1988. During their marriage the Tahats had two children. At the time of the marital dissolution, neither child was a

dependent.

In 1995, the Tahats moved to the United States. They decided one of them should remain home with the children. Mary Tahat assumed this noble role, which included cleaning house and preparing meals.

Hasan Tahat worked at the Yakima Regional Clean Air Agency (YRCAA). As an employee at the Clean Air Agency, Hasan contributed to a defined benefits plan and a deferred compensation plan. With the money he would have spent on lunch at a restaurant, Hasan invested in the stock market. At the time of their separation, the stock market account totaled $39,000. After the parties filed for divorce, Hasan lost most of the value of the account by gambling that he attributes to postseparation depression.

In 2007, before the couple separated, they purchased, for $200,000.00, a home on Summitview Avenue, in Yakima. The Tahats used $29,506.17 in proceeds from the sale of their previous home as a down payment. Because of bad credit, Mary's name was not added to the title to the Summitview residence.

Mary returned to work outside the home, in 2008, when their eldest child entered prestigious Whitman College. Mary worked as a science teacher at the Yakima Valley School District.

The Tahats lived together on Summitview Avenue until August 2010, when Mary moved from the residence. After the Tahats separated, Hasan refinanced the home. The

home's value had depreciated in the interim. A broker valued the residence at $168,000, an amount less than the debt on the home.

At the time of separation, the Tahats owed $3,956.33 on a Visa credit card and $1,700.00 to Jeffrey Talbot, their immigration attorney. Mary Rose did not use the credit card after separation, but she paid $2,123.00 on the card to avoid further damage to her credit. Hasan Tahat continued to use the Visa card.

## PROCEDURE

In April 2011, the couple, without legal representation, jointly petitioned for divorce. In August 2011, Mary Rose Tahat hired an attorney, Troy Lee. Hasan continued to represent himself. On September 8, Mary, through counsel, filed a response to the petition for dissolution, despite having earlier joined the petition. The response did not seek spousal maintenance.

Hasan Tahat failed to disclose, in discovery, the value of his retirement and stock accounts. In March 2012, the court ordered Hasan to produce his retirement and stock account statements. For his delay, the court fined Hasan $150. Anticipating Hasan's compliance, the court scheduled trial for June 18. In May 2012, Mary moved to continue trial because of her lawyer's preplanned vacation. Trial was reset for August 7.

On June 1, 2012, attorney Robert Velikanje appeared on behalf of Hasan Tahat. Thereafter, Hasan alleged Mary inherited a substantial sum of money from

her father, to which he claimed an entitlement. To substantiate his claim, Hasan scheduled depositions of Mary's brothers for the day before trial.

On July 27, 2012, Mary Rose Tahat again moved for a continuance, this time because she and her brothers planned a vacation the week of trial. Hasan Tahat objected, claiming Mary sought to delay and prevent him from deposing her brothers. The court granted Mary's motion and reset trial for November 13, 2012.

On November 6, 2012, Hasan Tahat's counsel conducted the deposition of Mary Tahat. When asked, during the deposition, if she sought spousal maintenance, Mary responded in the negative.

On November 13, 2012, Mary Tahat terminated the services of attorney Troy Lee. To accommodate Mary's new counsel, the court continued trial to December 11, 2012, "with monetary terms." Clerk's Papers (CP) at 100. On November 28, 2012, Mary moved for another trial continuance so that her new attorney could adequately prepare. Her motion was denied and that attorney withdrew.

On December 6, 2012, less than a week before trial, Mary Tahat retained a third attorney, Ellen McLaughlin. On December 11, 2012, the day trial began, Mary moved to amend her pleadings to include a claim for spousal maintenance. The court denied her request as tardy and prejudicial. The trial court denied a renewed motion to amend the pleadings at the beginning of the second day of trial.

At trial, the parties presented testimony relevant to the distribution of the stock market account, the Summitview residence, and the money Hasan alleged Mary inherited. Rather than seeking ownership of the house, Mary requested the court apportion half the down payment to her. Hasan demurred, offering her the house with its liabilities. Mary and her brothers testified that she, as their half-sister, never inherited any money from their father's estate.

Trial ended on December 12, 2012. At the conclusion, the trial court declared, "I'll have a *written decision* to you by the end of [the] week." Report of Proceedings (RP) at 187 (emphasis added).

On December 14, 2012, the court sent counsel a three-page letter on court stationery. Because we must decide whether the letter constitutes a "decision" under CR 59, we repeat the entire letter. Throughout this opinion we will refer to the December 14 epistle as "the letter ruling," although we attach no legal significance to the term:

> December 14, 2012
>
> Re: Tahat 11-3-00430-1
>
> Dear Counsel:
>
> This family law litigation is concerned solely with the identification of property and liabilities of the parties, its characterization and its division.
>
> The parties married in 1988 and separated on August 1, 2010. Two children were born of the marriage, both of whom have attained adulthood. Both husband and wife have doctorates. The husband is employed by the

5

Yakima Regional Clean Air Authority. The wife is employed by the West Valley School District as a science teacher.

The husband focused a great deal of his energy upon the supposed existence of a large inheritance which the wife has received or will receive. The inheritance is from the Philippines and is the proceeds from the sale of family owned property. Mr. Tahat's evidence concerning this inheritance is based upon conversations he had with his wife at some time in the past and observations he made when they first married and lived in the Philippines. Mrs. Tahat counters with her own testimony, denying the existence of any inheritance, either presently or in the future. Similarly, three of her brothers testified that she had not received and will not receive any inheritance because she was not an heir of the deceased [her stepfather] or she may not be named as an heir to property owned by her mother or she relinquished any rights in the property by giving one of her siblings a power of attorney. In Re Marriage of Hurd, 69 Wn App 38 (1993) [Bequest in will of living testator creates only an expectation in devisee]

There was testimony concerning a bank account at the Bank of the Philippines which was opened by Robert Dy, the wife's brother or half brother. Mr. Dy said that he borrowed funds and placed them in the account at the bank in order to facilitate the parties' immigration to the United States in 1995. He then withdrew the funds and used the proceeds to pay back the loan. These funds cannot reasonably be considered an asset of the wife or of the community.

All in all, despite various bits of testimony cited by the husband's counsel, there is no concrete evidence of a large separate property asset belonging to the wife consisting of property, or the proceeds of the sale of property, or an expectation of the same, located in the Philippines, or elsewhere.

The case therefore devolves into a division of assets and liabilities.

The family home is located at 110 North 90th Avenue. A letter from a realtor places its value, approximately one year after separation, at $168,000. It is encumbered with a mortgage in the amount of $170,000 as a result of a refinance entered into by the husband approximately 6 months ago. And curiously, title is held by the husband as his separate property, although community assets were the source of funds used to purchase the house. The wife, although her position was not entirely clear to the court, does not want the house, but only wants 50% of the down payment. This is a reasonable request. Therefore, the house, and all encumbrances on it, is

6

awarded to the husband. The wife is awarded $12,936.00 representing one half of the proceeds from the sale of the parties' previous house on Tieton Drive.

Both parties have PERS 3 retirement accounts, which will be divided by QDRO. The husband, additionally, has a deferred compensation account, which will also be divided by [a] QDRO. The $1,000 balance left after the Cobalt was paid off is awarded to the husband.

There was stock account at US Bancorp, which was a community asset dissipated by the husband after separation. The wife is awarded $19,661, which is 50% of its value at separation.

There is another account at US Bank that Mr. Tahat characterizes as the same account. Again, it is clearly a community asset, but, in examining and comparing the two statements, [Petitioner's Exhibit 2 and Respondents Exhibit 1, Tab 19] it appears to be a different account. I am certainly willing to be educated on the point, but absent some contrary proof, the wife is awarded 50% of the value of account #XXXXXXX5686 as it existed at the time of separation; $9,706.00.

Regarding debts, the husband, who is already paying back taxes on a payment plan, is ordered to continue the plan and pay off the 2010 tax debt. He is similarly ordered to pay the balance on the VISA card, since he has been the only person using the account since separation. The wife will pay the outstanding legal fee owed to Jerry Talbott.

The Mercury Cougar automobile is valued at $2,000 and awarded to the husband. The 2008 Honda CRV is valued at $26,000 as of the date of separation and is awarded to the wife. She will also be responsible for payment of the auto loan.

Although the parties divided quite a bit of personal property at the time of separation, a number of additional items are sought by the wife and some by the husband. It is apparent to the court that little effort has been expended by either party in trying to locate and deliver important papers, such as passports and diplomas. Both parties are directed to search their respective residences for items which could reasonably be characterized as belonging to the other party. If certain important items remain unaccounted for, the court may resort to extraordinary means to facilitate the discovery and delivery of the most significant personal property.

7

No. 31454-5-III
*In re Marriage of Tahat*

> Thank you for your attention,
> . . . .
> Michael G. McCarthy
> Judge

CP at 91-93. The trial court judge signed his name on the December 14 letter. He also filed the letter with the clerk of the court.

On January 10, 2013, Hasan Tahat moved for reconsideration pursuant to CR 59(a)(1)(5)(7)(9). In his motion, Hasan asked the court to reconsider its division of the down payment to purchase the home, to award him attorney fees because of Mary's trial continuance, and to divide a local improvement district assessment imposed on the Summitview residence. In a letter to the court and to Hasan's counsel, Mary Tahat objected to the motion as untimely. The court heard arguments on the motion at a January 17 hearing, scheduled for the presentment of findings of fact, conclusions of law, and a decree of dissolution.

During the January 17 hearing, Mary Tahat argued the motion for reconsideration was untimely since CR 59 requires a party to file a motion for reconsideration within 10 days of the decision. Mary contended December 14, 2012, the date of the letter ruling, was the date of the decision. If, however, the court found the motion timely, Mary requested time to supply the court with a brief. Hasan conceded CR 59 requires a motion for reconsideration within 10

8

days, but argued the rule contemplates moving for reconsideration from a final order, not a letter ruling.

The trial court recognized CR 59 permits a motion to reconsider a final order or "other decisions," but reasoned that the letter does not trigger the 10-day period because "the Court of Appeals wouldn't let you appeal from a letter." RP at 189. Accordingly, the trial court ruled the motion for reconsideration timely.

During the January 17 hearing, Hasan Tahat began arguing why the court should reconsider its ruling when Mary interrupted, ostensibly to renew her request for time to brief the issues presented by the motion for reconsideration. The trial court responded by declaring there were only a few arguments, and the court told Hasan to proceed with argument because he wanted to resolve the motion that day.

After hearing arguments, the court reversed its decision awarding Mary one-half of the Summitview down payment, since the payment dissipated into the home, which lacked equity. The trial court also imposed $2,500 in attorney fees for Mary's last minute trial continuance. The court denied Hasan Tahat's request to divide the local improvement district assessment, since the assessment was tied to the house awarded to Hasan.

The trial court entered findings of fact and conclusions of law, and a decree of dissolution on January 17, 2013.

9

LAW AND ANALYSIS

*Motion to Amend*

Mary Tahat first contends the trial court erred when it denied her motion to amend her response to the petition for dissolution to include a claim for spousal maintenance. Mary argues that the request for maintenance arose because of Hasan's dissipation of marital assets, of which she was unaware when she filed her response. She contends Hasan was not prejudiced by her proposed amendment because he had knowledge of his income and assets, the basis of the request for spousal maintenance, so no discovery was needed. Hasan Tahat argues that Mary was asked during a November 6, 2012, deposition, if she sought maintenance and no follow up questions were asked since she responded "no." Hasan claims he was not prepared, at trial, to address a request for spousal maintenance, particularly since he did not know the basis for the request when Mary was well educated, gainfully employed, and had income to meet her needs.

The controlling procedural rule, CR 15(a) reads, in pertinent portion:

> Amendments. . . . Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Hasan did not consent to the amendment, so Mary needed court permission.

The decision to grant leave to amend the pleadings is within the discretion of the trial court. *Wilson v. Horsley*, 137 Wn.2d 500, 505, 974 P.2d 316 (1999). The trial court's decision will not be disturbed on review except on a clear showing of abuse of

discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. *Horsley*, 137 Wn.2d at 505; *State ex. rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

CR 15(a) provides that leave to amend should be freely given, "except where prejudice to the opposing party would result." *Caruso v. Local Union No. 690*, 100 Wn.2d 343, 349, 670 P.2d 240 (1983). Factors which may be considered in determining whether permitting amendment would cause prejudice include undue delay, unfair surprise, and jury confusion. *Horsley*, 137 Wn.2d at 505-06; *Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 165-66, 736 P.2d 249 (1987). Delay must be accompanied by prejudice to the nonmoving party. *Walla v. Johnson*, 50 Wn. App. 879, 883, 751 P.2d 334 (1988). The need for additional discovery is sufficient prejudice to deny a motion to amend. *Oliver v. Flow Int'l Corp.*, 137 Wn. App. 655, 664, 155 P.3d 140 (2006).

We discern valid arguments on both sides as to whether the motion to amend should have been granted. The motion came on the first day of trial. Hasan would have needed to defend against an additional claim, for which he had no time to prepare. He forewent questioning Mary Tahat about the claim, during a deposition, since she denied seeking spousal maintenance. Since Hasan Tahat raised legitimate concerns of prejudice, we conclude the trial court did not abuse its discretion when denying the motion to amend.

11

No. 31454-5-III
*In re Marriage of Tahat*

*Timeliness of Motion for Reconsideration*

CR 59(b) reads:

(b) Time for Motion; Contents of Motion. A motion for a new trial or for reconsideration shall be filed *not later than 10 days after the entry of the judgment, order, or other decision.* The motion shall be noted at the time it is filed, to be heard or otherwise considered within 30 days after the entry of the judgment, order, or other decision, unless the court directs otherwise.

A motion for a new trial or for reconsideration shall identify the specific reasons in fact and law as to each ground on which the motion is based.

(Emphasis added.)

The trial court sent a letter ruling to counsel on December 14, 2012. Hasan Tahat filed his motion for reconsideration on January 10, 2013, twenty-seven days later. Mary Rose Tahat argued the motion was untimely and thus the trial court lacked authority to entertain the motion. Therefore, we must explore the import of the words "judgment, order, or other decision," focusing on the word "decision." In particular, we must decide whether the December 14 letter constituted a "judgment, order or other decision" under CR 59(b). We look to definitions, principles of rule construction, the policies and purposes behind the civil rules, and the law of other jurisdictions to answer the question. We also explore practical considerations. As already stated, we hold that the December 14 letter was not a "judgment, order or other decision" under CR 59(b). Therefore, Hasan Tahat's motion for reconsideration was timely.

Prior to 2005, CR 59(b) did not contain all of the nouns "judgment," "order" and

12

"decision." Instead former CR 59(b) demanded the filing of a motion for reconsideration within 10 days of entry of a "judgment." CR 59(b) was amended in 2005 to expand the range of actions a trial court may reconsider. In 2005, language was added to permit reconsideration within 10 days of entry of a "judgment, order, or other decision." CR 59(b). In other words, the terms "order" and "other decision" was added.

The Supreme Court order adopting the 2005 CR 59(b) amendment is found at 154 Wn.2d 1101, 1121 (2005). The order does not give a reason behind the amendment or any definition of its added words "order or other decision." The principal purpose behind the amendment may have been to strike the word "served," so that the 10-day deadline may be met only by filing a motion for reconsideration, rather than filing and serving upon the nonmoving party. The previous iteration of the rule required both filing and service of the motion within 10 days. 15 KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 38:20 (2013). The language was enforced in *Schaefco, Inc. v. Columbia River Gorge Comm'n*, 121 Wn.2d 366, 849 P.2d 1225 (1993).

We first review definitions provided by the civil rules. "Decision" is not defined in the rules. "Judgment" and "order" are defined in CR 54(a):

> (1) *Judgment.* A judgment is the final determination of the rights of the parties in the action and includes any decree and order from which an appeal lies. A judgment shall be in writing and signed by the judge and filed forthwith as provided in rule 58.
> (2) *Order.* Every direction of a court or judge, made or entered in writing, not included in a judgment, is denominated an order.

CR 54(a)(2) suggests that an "order" is distinct from a "judgment." Conversely, CR 54(a)(1) insinuates that an "order" can be a form of a "judgment." In other words, the two are not mutually exclusive. This insinuation further hints of overlapping in meaning among all three nouns: "judgment," "order," and "decision" found in CR 59(b).

*Stork v. International Bazaar, Inc.*, 54 Wn. App. 274, 774 P.2d 22 (1989), *abrogated on other grounds by Allison v. Hous. Auth. of City of Seattle*, 118 Wn.2d 79, 88, 821 P.2d 34 (1991) stands for the proposition that a letter ruling is not a "judgment" under CR 59(b). In *Stork*, the trial court issued a letter opinion. After 10 days passed, defendants moved for reconsideration. Mae Stork objected to the motion as untimely. Over Stork's objection, the trial court reversed the decision it reached in its letter opinion. Stork appealed, again arguing the motion for reconsideration should have been denied as untimely. The court of appeals concluded "no judgment had yet been entered when the defendants served and filed their motion for reconsideration. Therefore, the motion was timely under CR 59." *Stork*, 54 Wn. App. at 289. *Stork*, does not end our discussion, however, since *Stork* did not answer whether a letter ruling may constitute an "order" or a "decision" under CR 59(b). *Stork* came under the former language of the rule.

For at least one other reason, the December 14 letter ruling may not be viewed as a judgment or even as an order. The civil rules demand the following of a presentment procedure before entry of an order or judgment. CR 54(f) reads, "No order or judgment shall be signed or entered until opposing counsel have been given 5 days' notice of

14

presentation and served with a copy of the proposed order or judgment[,] unless" an emergency exists, opposing counsel approved the proposed order or waived notice of presentation, or if judgment is made in open court. CR 54(f). The trial court's December 14 letter could not be a judgment or order because it did not comply with the presentation requirement of CR 54(f). The trial court sent and filed the letter, before Hasan Tahat had been given notice of presentation. No emergency existed, counsel did not waive notice of presentation, and the judgment was not made in open court. Although not dispositive, these same facts and CR 54(f) encourage a conclusion that the letter should also not be considered a "decision."

We have ruled out the possibility that the December 14 letter ruling is an "order," so we focus on the term "other decision." We find little guidance from other jurisdictions in discerning the grasp of the word "decision." Washington's version of CR 59(b) is unique. 15 KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 38:1. Federal Rule of Civil Procedure 59(b) does not reference any motion for reconsideration and requires a motion for a new trial to be filed within 28 days of "entry of judgment." State versions of the rule are usually couched in terms of filing a motion for new trial within 10 days of "entry of judgment" or "entry of final judgment." The Iowa Rule of Civil Procedure 1.1007, allows a motion for new trial if "filed within fifteen days after filing of the verdict, report or *decision* with the clerk." (Emphasis added.) The Minnesota Rule of Civil Procedure 59.03, demands that a "notice of motion for a new

15

trial . . . be served within 30 days after a general verdict or service of notice by a party of the filing of the *decision* or order." (Emphasis added.) No case in Iowa or Minnesota discusses the import of the word "decision" within the context of a motion for reconsideration or new trial.

We next examine principles of construction in construing "decision," within the context of CR 59(b). This court interprets a court rule as though it were enacted by the legislature, giving effect to its plain meaning as an expression of legislative intent. *State v. Brown*, 178 Wn. App. 70, 312 P.3d 1017 (2013), *review denied,* 180 Wn.2d 1004 (2014); *State v. Chhom*, 162 Wn.2d 451, 458, 173 P.3d 234 (2007). Plain meaning, in turn, is discerned by "reading the rule as a whole, harmonizing its provisions, and using related rules" to help identify the intent behind it. *Chhom*, 162 Wn.2d at 458. "When interpreting an amendment, a material change in the language of the original act is presumed to indicate a change in legal rights." *State v. Greenwood*, 120 Wn.2d 585, 592-93, 845 P.2d 971 (1993).

We question whether an amendment must always portend a change or addition to a court rule. Sometimes, the amendment may only seek to clarify rather than substitute the rule's original intent. For argument sake, however, we will assume that the Supreme Court sought to add meaning to CR 59(b) with the 2005 amendment and that the term "decision" describes court actions other than a "judgment" or even an "order." We can discern such other court actions, without including a letter ruling within the term

16

"decision." Such other actions could include "parenting plans," "decrees," and "injunctions." Although such rulings are in the nature of an order, the Supreme Court may have added the word "decision" because other such rulings are not always labeled as a judgment or order. *See Bank of Am., NA v. Owens*, 153 Wn. App. 115, 118, 221 P.3d 917 (2009). The reader might conjure other examples of "decisions" not specifically labeled "orders" or "judgments."

In discerning the meaning of "other decision" in CR 59(b), we employ two allied rules of statutory construction voiced in Latin. Noscitur a sociis literally indicates the "meaning of a word may be known from accompanying words." Ejusdem generis is Latin for "of the same kind."

Under the principle of noscitur a sociis, a single word in a statute should not be read in isolation. *Jongeward v. BNSF Ry. Co.*, 174 Wn.2d 586, 601, 278 P.3d 157 (2012); *State v. Roggenkamp*, 153 Wn.2d 614, 623, 106 P.3d 196 (2005). Instead, the meaning of words may be indicated or controlled by those with which they are associated. *State v. Jackson*, 137 Wn.2d 712, 729, 976 P.2d 1229 (1999). Just as a human being may be judged by the company she keeps, a word may be evaluated by its company. The maxim noscitur a sociis is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to an enactment. *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S. Ct. 1579, 6 L. Ed. 2d 859 (1961); *In re Guardianship of Knutson*, 160 Wn. App. 854, 867 n.13, 250 P.3d 1072 (2011).

17

Under ejusdem generis, where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. *Knutson*, 160 Wn. App. at 867 n.13. Under the doctrine of ejusdem generis, specific words or terms modify and restrict the interpretation of general words or terms where both are used in sequence. *State v. Reader's Digest Ass'n. Inc.*, 81 Wn.2d 259, 279, 501 P.2d 290 (1972).

Judgments and orders are types of "decisions." Therefore, we limit the meaning of "decision" under CR 59(b) to court actions similar in nature to judgments and orders. Trial court judgments and orders have common features, such as a formal caption without the stationery of the judge and a description of the pleading in the right hand corner of the caption. They are formally labeled as judgments or orders. They purport to resolve all claims in the suit. These features lead the court, the parties, and the attorneys to accept them as final, not over which to quibble, but with which to comply. *See Bank of Am., NA* 153 Wn. App. at 126. Letter rulings do not have these same features or the same standing in the legal community.

Washington case law has long considered letter rulings as preliminary or tentative decisions subject to change before a final decision that begins the time for an appeal or motion for reconsideration. *Stork*, 54 Wn. App. at 288. Although a court's oral opinion or written memorandum of opinion may be considered in interpreting the court's findings of fact and conclusions of law and amounts to an informal expression of opinion when

18

rendered, the oral or written opinions have no final and binding effect unless formally incorporated into the findings, conclusions and judgment. *State v. Wilks*, 70 Wn.2d 626, 629, 424 P.2d 663 (1967). Even a written memorandum opinion filed prior to the entry of a formal judgment or order does not deprive the trial court of the power to change its indicated ruling. *Fogelquist v. Meyer*, 142 Wash. 478, 480, 253 P. 794 (1927).

Mary Tahat observes that the trial court, at the end of trial, declared he would provide a "written decision" to the parties by the end of the week. According to Mary, the court's December 14 letter, which arrived by the end of the week, should therefore be considered a "decision" within the meaning of CR 59(b). This argument assumes that a word cannot have different meanings in varying circumstances, an assumption that dictionaries and we do not accept.

Mary Tahat also argues that Hasan Tahat must have considered the letter ruling a "decision" under CR 59(b) or else he would not have filed his motion for reconsideration until a later order was signed by the trial court. This argument correctly observes that such a motion should not be brought until a judgment, order or other decision is signed and filed by the trial court. But this argument assumes that a party cannot, out of caution, file a premature motion for reconsideration. We reject this assumption and will not penalize Hasan for a hasty motion. CR 59(j) anticipates that an early motion for reconsideration may be filed.

19

The trial court's December 14 letter ruling was an exemplary explanation of the facts and issues and a broad resolution of the parties' dispute. The court described the couple's relative financial situations, concluded Mary Tahat received no inheritance, distributed the contested assets, awarded Mary an equitable lien, and ordered the parties to locate and return certain personal property to each other. From this thorough analysis, Mary posits that the letter ruling should be considered a "decision." Still, the letter does not formally list the trial court's findings of fact, or conclusions of law. Nor does the letter ruling enter a decree of dissolution of marriage. Both the court and the parties expected formal orders to be later entered based upon the letter ruling, rather than the letter being an end in itself, as shown by the trial court's signing and filing of findings of fact, conclusions of law, and a decree on January 17. None of these January 17 court actions are labeled as a judgment or order, illustrating our observation that the term "decision" can refer to a decree.

Although the trial court's letter ruling is thorough, language in the letter expresses tentativeness. The court wrote:

> I am certainly willing to be educated on the point, but absent some contrary proof, the wife is awarded 50% of the value of account #XXXXXXX5686 as it existed at the time of separation; $9,706.00.

CP at 92.

The language shows the trial court did not intend its decision to be final and binding.

If we were to answer that the December 14 letter constitutes an "other decision"

20

under CR 59, lawyers would need to parse letter rulings to determine their sufficiency to meet the requirements of "other decision." Lawyers would need to weigh whether any findings and conclusions have sufficient scope and detail. Lawyers would need to guess whether the letter's language is sufficient to constitute a judgment, decree or some other form of final adjudication. We prefer to advance certainty in court procedures. Also, if we were to nominate the letter ruling as an "other decision," we would interfere in the policy behind CR 54(f) that requires presentment before findings of fact and conclusions of law are entered.

Custom enters the law of commercial transactions, RCW 62A.2-202, but rarely, if ever, is considered a factor in civil procedure. Still the custom or practices of lawyers and judges in this instance influence our decision. From our prior experience as practitioners, we know that lawyers do not consider a letter ruling a formal decision for purposes of the time running for a motion for reconsideration. A shock wave might run through the legal community if we were to rule otherwise. From our knowledge as former appellate practitioners and as judges, we agree with the trial court that his December 14 letter would not be considered a final ruling for purposes of an appeal. The Court of Appeals would demand formal findings of fact, conclusions of law, and decree of dissolution before entertaining review. The law is served by having the same commencement date for a motion for reconsideration and an appeal.

Proceeding through the presentment procedure envisioned by CR 54(f) before

requiring a motion for reconsideration, under such circumstances, serves economy. The trial court may change its decisions before signing the final judgment such that a reconsideration motion is unnecessary.

In short, we hold that, in a superior court bench trial, a litigant has 10 days from the date of the entry of formal findings of fact, conclusions of law, and a judgment, decree or another final order labeled as such, to file a motion for reconsideration. A letter ruling does not commence the 10 days.

A decision that varies with our holding is this division's *Steinmetz v. Call Realty, Incorporated*, 107 Wn. App. 307, 23 P.3d 1115 (2001), in which we held that a motion for reconsideration was untimely. We held that a district court's judge letter opinion constituted an "order" and therefore commenced the time by which a party needed to file a motion for reconsideration. The trial court's letter included "factual findings" and "unequivocally enter[ed] judgment for Call Realty." 107 Wn. App. at 311. We reasoned:

> First, we disagree with *Knox* insofar as it appears to require a formal caption denominating the particular piece of paper on which an order or judgment is contained as an "order" or "judgment." Certainly nothing in RALJ 5.2(b) would appear to require this. This is particularly so in district court because of the high volume of cases. It would seem a bit inefficient to require a district court judge, who has already articulated findings, conclusions, and a judgment, to then schedule another hearing for presentment of findings, conclusions, and judgment just to add a caption. Second, the case before us is distinguishable on the second *Knox* requirement. Here, the district court judge concluded her decision with

22

"[j]udgment is entered in favor of Defendant." CP at 5. The language could not be more unequivocal. CRLJ 58[1] requires no more.

*Steinmetz*, 107 Wn. App. at 312-13.

In *Steinmetz*, we heavily relied on RALJ 5.2(b), which allows a memorandum to substitute for a separate document labeled findings of fact and conclusions of law, if the memorandum includes "formal findings of fact and conclusions of law." CR 52(a)(4) reads similarly:

> (4) Form. If a written opinion or memorandum of decision is filed, it will be sufficient if formal findings of fact and conclusions of law are included.

We can distinguish *Steinmetz* on many grounds. The case originated from the busy district courts. More importantly, the letter formally granted judgment to the defendant. Our trial court's letter did not grant a decree and spoke in tentative terms. In *Steinmetz*, we relied on a limited jurisdiction rule, CRLJ 58, which directs the trial court to enter judgment immediately after close of trial unless the court reserves a decision for later. The superior court's CR 58 does not have a similar provision.

Despite its discrete features, the tenor of *Steinmetz* diverges from our analysis. To the extent *Steinmetz* is inconsistent with our holding, it is overruled with regard to a motion for reconsideration in superior court. Whether or not *Steinmetz* should be overruled, in the context of a district court trial, we do not decide.

---

[1] "If the trial is by the judge, judgment shall be entered immediately after the close of the trial . . . . "

No. 31454-5-III
*In re Marriage of Tahat*

Mary Tahat also contends the trial court lacked authority to consider Hasan Tahat's motion for reconsideration because CR 59(b) demands that the motion be heard "within 30 days after the entry of the judgment, order, or other decision." This contention repeats the argument that the December 14 letter ruling constitutes a "decision." We reject the argument for the same reasons expressed above.

*Opportunity for Response to Motion for Reconsideration*

Both the state superior court rules and county local rules address the procedure to follow upon the filing of a motion for reconsideration. Because many, if not, most motions repeat arguments previously forwarded by litigants, the procedure is streamlined. Trial courts may summarily deny the motion without argument or response from the nonmoving party. Only if the trial court might grant the motion need the opposing party respond after notice from the trial court.

CR 59(e) reads:

Hearing on Motion. When a motion for reconsideration . . . is filed, the judge by whom it is to be heard may on the judge's own motion or on application determine:

(1) Time of Hearing. Whether the motion shall be heard before the entry of judgment;
(2) Consolidation of Hearings. Whether the motion shall be heard before or at the same time as the presentation of the findings and conclusions and/or judgment, and the hearing on any other pending motion; and/or
(3) Nature of Hearing. Whether the motion or motions and presentation shall be heard on oral argument or submitted on briefs, and if

24

on briefs, shall fix the time within which the briefs shall be served and filed.

Yakima Superior Court LR 59(3) provides:

> (e) Hearing on Motion
> > (3) Nature of Hearing
> > .... The judge to whom the motion for reconsideration is made shall determine whether the motion shall be heard on oral arguments or submitted on the briefs. It will be presumed that there will be no oral argument unless requested by the judge.

Under the rules, Mary Tahat need not have responded to the motion for reconsideration unless the trial court asked for a brief. She also was entitled to notice from the court of a hearing, before the motion was heard. Instead, the trial court entertained Hasan Tahat's motion at the time scheduled for entry of findings of fact and conclusions of law. We agree with Mary Tahat that she was unfairly trapped when she appeared for entry of the decree without notice that the court would entertain the motion for reconsideration. During the hearing, the trial court refused her an opportunity to brief and respond to the issues raised despite Hasan Tahat's providing a written motion and thorough brief in support of the motion. In so doing, the trial court failed to adhere to the court rules.

We agree with the trial court that expedient rulings are desirable, but rulings should come only after rules are followed and each side is given a fair opportunity to be heard. Allowing each side an opportunity to be heard on a motion for reconsideration

before granting the motion may also serve to avoid an appeal, thereby resolving the suit sooner.

Mary Tahat also argues her due process rights were violated because she had no notice that the motion for reconsideration would be heard nor an opportunity to respond. Since we resolve this issue on the basis of court rules, we need not reach her due process claim.

### *Trial Court Award of Attorney Fees*

Mary Tahat contends the court abused its discretion in awarding Hasan $2,500 in attorney fees. The court awarded Hasan attorney fees pursuant to his motion to reconsider. Since we remand the case to allow Mary an opportunity to respond to Hasan's motion for reconsideration, we need not address this assignment of error.

### CONCLUSION

We vacate the trial court's two rulings that followed Hasan Tahat's motion for reconsideration (1) its reversal of the ruling granting Mary Rose Tahat one-half of the down payment for the home and (2) the award of $2,500 in attorney fees to Hasan Tahat. We remand the case for the trial court to resolve anew the motion for reconsideration after allowing Mary Tahat the opportunity to respond in writing to the reconsideration motion. The trial court may exercise discretion in determining whether to entertain oral argument before granting or denying the motion for reconsideration.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with RCW 2.06.040, the rules governing unpublished opinions.

### *Award of Attorney Fees on Appeal*

Mary Tahat requests this court award her attorney fees on appeal pursuant to RCW 26.09.140 and as the prevailing party under RAP 14.2, 14.3, and 18.1. A court may award attorney fees in a dissolution proceeding "after considering the financial resources of both parties." RCW 26.09.140. "This requires an inquiry into the moving party's need and the nonmoving party's ability to pay." *In re Marriage of Mueller*, 140 Wn. App. 498, 510, 167 P.3d 568 (2007).

Mary argues she has the need and Hasan has the ability to pay attorney fees. Mary asks the court to take note that she earns around $45,000 a year while Hasan earns around $54,000 a year. While Hasan lives in the home, she lives in an apartment. In addition, Hasan squandered the couple's stock account.

Mary fails to recognize the change in circumstances brought about by the court's order. Hasan lives in the home, but he also assumed a mortgage that exceeds the value of the home. Hasan must repay Mary's one-half of the stock market account he wasted. The trial court distributed equally the remaining assets and liabilities. Therefore, we deny Mary attorney fees under RCW 26.09.140

27

No. 31454-5-III
*In re Marriage of Tahat*

Under RAP 14.2 this court may award attorney fees and costs to the prevailing party. Both parties prevailed on important issues on appeal. Therefore, we do not declare a prevailing party and deny Mary attorney fees on this ground also.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, C.J.