IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| REGENCE BLUESHIELD, a Washington corporation, | No. 85729-1-I |
| Respondent, | DIVISION ONE |
| v. | |
| STEPHEN D. SPEIDEL, N.D., P.C., a Washington Professional Service Corporation d/b/a SPEIDEL ALLERGY CLINIC, and STEPHEN D. SPEIDEL, an individual, | UNPUBLISHED OPINION |
| Appellants. | |

BOWMAN, J. — Heath care insurance provider Regence BlueShield sued Stephen Speidel, a naturopathic doctor, and his medical practice after conducting an audit and discovering pervasive overbilling for allergy immunotherapy. The trial court granted summary judgment on Regence's claims for breach of contract and violation of the Consumer Protection Act (CPA), chapter 19.86 RCW. Dr. Speidel appeals, arguing the trial court erred in granting summary judgment for Regence and denying his motion to amend the pleadings. We affirm.

FACTS

Dr. Speidel provides naturopathic health care, including allergy immunotherapy, to patients through his professional services corporation, Stephen D. Speidel N.D., P.C. (Speidel PC), also known as Speidel Allergy Clinic. In 2018, Speidel PC entered into a "Participating Professional Services Agreement" (PPSA) with Regence to become a part of its provider network. The agreement required Speidel PC to bill Regence for health care services using the

"most appropriate, current and specific coding" and to refrain from "misleading billing practices."

Dr. Speidel and his practice came to the attention of Regence's "Special Investigations Unit" as an "outlier" in billing amounts. In 2020, Regence conducted an audit of Speidel PC's billing for allergy treatments provided in 2018 and 2019. It discovered Speidel PC used an "incorrect method to calculate dosage," which led to "rampant, consistent overbilling" for preparing vials of antigens used to treat allergies.[1] Specifically, Regence determined Speidel PC's billing was inconsistent with "industry standard" coding established by the American Medical Association for health care billing and published in the "Current Procedural Terminology" manual (CPT Manual).

The applicable CPT Manual code provision allows providers to bill for preparing vials of antigens administered to patients over time by calculating the number of doses in each vial. And it provides that each "dose" is a "single injection" that includes "any amount of antigen or antigens from a multi-dose vial regardless of the number of antigens in the vial." In contrast, Speidel PC determined the number of doses by multiplying the number of injections in each vial by the number of individual antigens in each vial.[2] According to the audit, by calculating doses in this way, Speidel PC overbilled Regence in the amount of $788,267.36 during the audit period.

---

[1] Along with the audit, Regence obtained an independent medical review by an allergy and immunology specialist.

[2] Dr. Speidel acknowledged that the dosage calculation as described in his clinic's official written billing policy was inconsistent with the CPT Manual.

Through counsel, Dr. Speidel and his business appealed the audit findings, and an audit panel affirmed. Dr. Speidel did not exercise his right under the PPSA to judicial review of the audit findings. Dr. Speidel did invoke his right to mediation under the PPSA but he was "unsuccessful."

Regence sued Dr. Speidel and Speidel PC (collectively defendants) in August 2022, asserting breach of contract, violation of the CPA, unjust enrichment, and negligent misrepresentation. Regence sought, among other things, to recover the overpayment amount.[3] In December 2022, the defendants moved to dismiss all claims except for the breach of contract claim against Speidel PC since the only parties to the contract were Regence and Speidel PC. The trial court granted the defendants' motion to dismiss the breach of contract claim against Dr. Speidel in his individual capacity and otherwise denied the motion.

In March 2023, the defendants' attorney answered the complaint without asserting counterclaims against Regence. Then, in June 2023, Dr. Speidel filed a pro se "Complaint Jury Trial," naming himself and Speidel PC as plaintiffs.[4] Dr. Speidel purported to raise claims against Regence and other insurers, alleging a "conspiracy" to demand refunds. Regence moved to strike the pleading, as it was unclear whether the defendants sought to bring a new lawsuit or counterclaims to the existing one. And if they intended the latter, Regence

_____

[3] The initial audit letter sought reimbursement of $788,267.36 and the complaint sought $782,217.86. Regence later reduced the amount of its claim to $762,538.74 after subtracting amounts related to two patients.

[4] It appears from the record that around this time, Dr. Speidel appeared pro se on behalf of himself and his company in the rest of the proceedings.

3

argued the defendants needed to obtain leave from the court to assert new claims under CR 15(a).[5]

Dr. Speidel then filed a motion for "Leave to Amend Cross-Complaint" in August 2024. But he apparently did not file a proposed amended pleading.[6] The trial court entered orders striking the complaint and denying the motion to amend.

In September 2023, Regence moved for summary judgment on the CPA and breach of contract claims. Regence argued it was entitled to summary judgment on the contract claim because Speidel PC breached its contractual obligation to apply the most precise and appropriate billing methodology by calculating dosages contrary to the prescribed method in the CPT Manual. Regence further claimed the defendants violated the CPA through a practice of deceptive billing that affects the public interest. Dr. Speidel opposed the motion.

After a hearing, the trial court granted summary judgment on the contract and CPA claims in separate orders, finding that Speidel PC breached the PPSA and that both defendants violated the CPA. And it granted Regence's motion to voluntarily dismiss its remaining claims of unjust enrichment and negligent misrepresentation. The trial court then entered judgment against the defendants jointly and severally for $762,538.74 based on Regence's calculation of overpayments and awarded $195,105.00 to Regence in costs and attorney fees.

Dr. Speidel appeals.

---

[5] Under CR 15(a), a party may amend a pleading within 20 days of filing. Outside that timeframe, the party must obtain the court's leave to amend or written consent of the adverse party.

[6] The superior court clerk's office rejected the pleading because the caption did not match the case title. But Regence nevertheless responded, and the trial court ruled on the motion.

ANALYSIS

Dr. Speidel argues the trial court erred by granting summary judgment for Regence and denying his motion to amend his complaint.[7]

Breach of Contract

Dr. Speidel challenges the order granting summary judgment on Regence's breach of contract claim on several bases. But because the trial court dismissed the contract claim against Dr. Speidel in his individual capacity and granted summary judgment against only Speidel PC, Dr. Speidel cannot appeal this ruling.

The long-standing rule under Washington law is that with limited exception, individuals appearing before the court on behalf of another party or entity must be licensed in the practice of law. *No on I-502 v. Wash. NORML*, 193 Wn. App. 368, 372-73, 372 P.3d 160 (2016). And only active members of the state bar may practice law in Washington. RCW 2.48.170.

We have recognized a limited "pro se exception" to this general rule, permitting nonlawyers to appear and act in any court as their own attorney " 'without threat of sanction for unauthorized practice.' " *No on I-502*, 193 Wn. App. at 373[8] (quoting *Cottringer v. Dep't of Emp. Sec.*, 162 Wn. App. 782, 787-88, 257 P.3d 667 (2011). But this pro se exception is limited, applying "only if the layperson is acting *solely on his own behalf* with respect to his own legal rights

---

[7] Dr. Speidel also assigns error to the trial court's order striking his complaint. But he makes no specific argument addressing the order, so we need not address that assignment of error. *See* RAP 10.3(a)(6) (appellant must present "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record").

[8] Internal quotation marks omitted.

and obligations." *Id.*[9] (quoting *Cottringer*, 162 Wn. App. at 787-88).

"Because corporations are artificial entities that can only act through their agents," the pro se exception does not apply. *Lloyd Enters., Inc. v. Longview Plumbing & Heating Co.*, 91 Wn. App. 697, 701, 958 P.2d 1035 (1998). Entities and "corporations appearing in court proceedings must be represented by an attorney." *Id.* This rule applies with no less force simply because Dr. Speidel is a sole owner who, as far as we can determine from the record, controls the corporate entity. *See Cottringer*, 162 Wn. App. at 788-89 (no " 'sole stockholder' " exception to the rule that corporate entities must be represented by a licensed attorney); *Dutch Vill. Mall v. Pelletti*, 162 Wn. App. 531, 539, 256 P.3d 1251 (2011) (no exception for single-member limited liability company).

Because Dr. Speidel's authority does not extend beyond representing his own individual interests on appeal, we decline to consider his arguments challenging the order granting summary judgment against Speidel PC.

CPA

Dr. Speidel's pro se status does not preclude his arguments challenging the summary judgment order on Regence's CPA claim because the court granted judgment on liability and damages against both defendants.

We review summary judgment orders de novo and consider "the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate when "there is no genuine issue as to any

---

[9] Internal quotation marks omitted.

material fact" and the moving party is entitled to judgment as a matter of law. CR 56(c).

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020.

> To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in [the conduct of] trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation.

*Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 204 P.3d 885 (2009). Deceptive conduct satisfies the public interest element if it injured others or had the capacity to do so. RCW 19.86.093(3). Failure to satisfy any element is fatal to a CPA claim. *Sorrel v. Eagle Healthcare, Inc.*, 110 Wn. App. 290, 298, 38 P.3d 1024 (2002). And individuals may be personally liable for corporate action under the CPA if they participate in or approve wrongful conduct. *State v. Arlene's Flowers, Inc.*, 193 Wn.2d 469, 535, 441 P.3d 1203 (2019).

"Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 790, 719 P.2d 531 (1986). But a determination that alleged conduct involves breach of a private contract does not end the analysis. Where a complaint asserts a CPA claim involving a private dispute, the court considers four factors to assess the public interest element: whether (1) alleged acts occurred in the course of the defendant's business, (2) the defendant advertised to the general public, (3) the defendant actively solicited the particular plaintiff, and (4) the parties occupy unequal bargaining positions. *Id.* at 790-91. The claimant need not establish all

7

four factors, and none is dispositive. *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 836, 355 P.3d 1100 (2015).

Dr. Speidel claims his billing practice cannot serve as the basis for a CPA claim because the matter is a "private dispute" as to the correct billing method and merely an alleged "breach of the parties' agreement," which "affects only the parties to the agreement." But Dr. Speidel did not oppose summary judgment on this basis. And when reviewing orders on summary judgment, we "consider only evidence and issues called to the attention of the trial court." RAP 9.12. Further, we generally will not consider arguments not raised below. RAP 2.5(a); *Wingert v. Yellow Freight Sys., Inc.*, 146 Wn.2d 841, 853, 50 P.3d 256 (2002); *Deien v. Seattle City Light*, 26 Wn. App. 2d 57, 63, 527 P.3d 102 (2023) ("we will not entertain claims of error on appeal that were not first presented to the trial court"). So, we decline to consider this argument raised for the first time on appeal.

Dr. Speidel next contends his conduct had only positive effects on the public interest because his patients received successful allergy treatment and "never paid."[10] But the efficacy of the provided medical treatment was not at issue. And Regence did not claim a public interest impact based on specific and direct financial harm to Dr. Speidel's patients. Rather, Regence alleged that the regular practice of overbilling Regence and other insurers affected the public interest. In any event, the evidence before the trial court on summary judgment did not establish that no patient paid any portion of the amounts billed during the two-year audit period.

---

[10] Dr. Speidel asserted below that his patients received "great medical care at no expense to them, except copays as appropriate."

Dr. Speidel also claims Regence was aware of his billing methodology before the 2020 audit, so it was not actually deceived. But Dr. Speidel does not cite to evidence in the record establishing Regence's specific knowledge of Speidel PC's miscalculation of dosage. Dr. Speidel and his spouse both testified they had no conversations with Regence about his billing method. And even assuming Regence reviewed some claims for reimbursement in 2018 and 2019, it does not follow, nor did Dr. Speidel claim, that Regence conducted a formal audit or discovered a link between inflated claims and the routine use of an unsanctioned method to calculate dosage before the 2020 audit. Indeed, as Regence points out, there is no logical explanation for why it would knowingly pay over $700,000 in inflated claims only to then engage in years of cumbersome internal processes and litigation to recover the overpayments.

Next, Dr. Speidel claims there was no evidence of "widespread" billing errors because other major insurers had their own "billing policy" in place. It appears that Dr. Speidel is referring to some of the insurers' policies that specified a maximum number of allergy immunotherapy doses covered annually.[11] But Dr. Speidel admitted that he followed only his own "billing policy." He testified that he billed all insurance companies in the same manner— calculating dosage by multiplying the number of injections in a vial by the number of antigens contained in the vial—and that he did not follow the CPT Manual's standard billing practice. And, as Regence points out, polices that placed a ceiling on the number of allowable doses per year did not prevent pervasive

---

[11] According to the record, Aetna established limits in 2018 on the number of doses covered annually, and Premera Blue Cross adopted a similar policy in 2019.

inflated billing; they only limited the financial harm with respect to some insurers.

Still, Dr. Speidel suggests there can be no CPA violation because the Washington State Department of Health (DOH) took no action against him or Speidel PC. But again, Dr. Speidel provides no relevant reference to the record. While a letter from the DOH Board of Naturopathy indicates that it was investigating a complaint against him, the record does not include the results of any DOH investigation.

Finally, where Dr. Speidel's own testimony supported Regence's claims, Dr. Speidel characterizes his testimony as only "90 [percent] accurate." He attributes certain inaccuracies to the effects of chemotherapy medications he was taking at the time of his deposition. But Dr. Speidel presented no competent medical evidence to establish impairment. And while the court granted his request for a three-month stay of the trial date due to his medical condition, nothing in the record indicates that Dr. Speidel requested a further continuance or objected to or sought to delay his deposition. Further, Dr. Speidel provided clarification to some of his deposition testimony in his opposition to summary judgment. But perhaps most importantly, Dr. Speidel does not imply or suggest that he mistakenly testified about the relevant facts of how he calculated dosages when billing Regence and other insurers.

In sum, none of Dr. Speidel's arguments raise genuine issues of material fact or otherwise establish that the trial court erred in granting summary judgment

on Regence's CPA claim.[12]

Motion To Amend

Dr. Speidel argues the court erred by denying his motion to amend his complaint. We disagree.

Dr. Speidel contends the court should have allowed his individual claims against Regence. But nothing in the record indicates what claims Dr. Speidel was attempting to raise against Regence or the factual basis for his new claims. And whether or not any theoretical claims against Regence were legally viable, Dr. Speidel fails to acknowledge the court's discretion to decide whether to allow the amendment of pleadings. *See Hines v. Todd Pac. Shipyards Corp.*, 127 Wn. App. 356, 373-74, 112 P.3d 522 (2005).

Dr. Speidel also fails to appreciate the likelihood of prejudice had the court allowed him to add new claims against Regence. Dr. Speidel filed his complaint 10 months after Regence filed suit, and he made his motion to amend the complaint 2 months after that. This was 2 months after the deadline for the disclosure of primary witnesses had passed and just 3 months before the close of discovery. He cannot show that the trial court abused its discretion. *See In re Marriage of Tahat*, 182 Wn. App. 655, 665-66, 334 P.3d 1131 (2014) ("The need

---

[12] For the first time in his reply brief on appeal, Dr. Speidel asserts that Regence could not sustain a claim under the CPA absent proof of fraud, proof that the billing was knowingly false, and proof that the public was deceived and injured. Dr. Speidel also challenges Regence's analogy to the Health Care False Claim Act, chapter 48.80 RCW, to argue that it demonstrated a public interest impact. And he contends that in the CPA context, courts should consider the competitive differential between insurers and health care providers. But we typically do not address arguments made for the first time in a reply brief, in part because the other party has had no opportunity to respond, so we decline to address the contentions Dr. Speidel raises for the first time in reply. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

for additional discovery is sufficient prejudice to deny a motion to amend [pleadings]."); *Elliott v. Barnes*, 32 Wn. App. 88, 92, 645 P.2d 1136 (1982) ("Undue delay is a proper ground for the denial of a motion for leave to amend."); *cf. Wilson v. Horsley*, 137 Wn.2d 500, 507, 974 P.2d 316 (1999) (where defendant was aware of the factual basis for a counterclaim for some time, trial court did not abuse its discretion by denying motion to amend).[13]

We affirm the summary judgment orders and judgment for Regence.

_____
Brumm, J

WE CONCUR:

_____       _____
Chung, J.                        Smith, C.J.

---

[13] Dr. Speidel also contends the trial court erred by proceeding with the summary judgment hearing because a "glitch" in the court's computer system resulted in "shuffled, incomplete trial files." But the record indicates the court was simply confused as to why Dr. Speidel filed two written responses to Regence's motion for summary judgment and why one document was slightly longer than the other. The longer response is 311 pages and includes briefing, a proposed order, and numerous exhibits. The court expressly acknowledged that it considered only the slightly longer version in its entirety. And that document is in the record on review. Further, Dr. Speidel does not identify a specific document that he filed that is not part of the trial court record. Nor did he ask the trial court to allow him to refile his response or to continue the summary judgment hearing to resolve any filing issue. We need not further address this claim of error. *See* RAP 2.5(a) (appellate court may refuse to review any claim of error not raised below).